THE STATE OF OHIO, APPELLANT, *v.* HIX, APPELLEE.

[Cite as State *v.* Hix (1988), 38 Ohio St. 3d 129.]

(No. 87-2166—Submitted June 13, 1988—Decided August 3, 1988.)

*Lee C. Falke,* prosecuting attorney, and *Mark B. Robinette,* for appellant.

*Meily & Mues, William D. Meily* and *Mary Beth Caudill,* for appellee.

DOUGLAS, J. This cause raises a single issue. Does R.C. 2945.39 mandate that a defendant who pleads not guilty by reason of insanity be provided with an independent examiner of his choice to determine defendant's sanity? For the following reasons, we find that a defendant has no such automatic entitlement.

R.C. 2945.39 provides in pertinent part:

"(A) If a defendant enters a plea of not guilty by reason of insanity, the court may order one or more, but not more than three, evaluations of the defendant's mental condition at the time of the commission of the offense. * * *

"* * *

"(3) * * * If more than one examination is ordered, the prosecutor and the defendant may recommend to the court an examiner whom each prefers to have perform one of the examinations.

"* * *

"(C) * * *

"If the court does not designate an examiner recommended by the defendant pursuant to division (A) of this section, the court shall inform the defendant that he may have independent expert evaluation and that if he is unable to obtain independent expert evaluation, it will be obtained for him, at public expense if he is indigent."

The interpretation of R.C. 2945.39 has led to conflict between courts of appeals in this state. In *State* v. *Marshall, supra,* the Court of Appeals for Cuyahoga County held that a defendant in a criminal case has no absolute right to an independent psychiatric evaluation pursuant to R.C. 2945.39. In a contrary holding, the Court of Appeals for Athens County, in *Semenchuk, supra,* held that "* * * when an evaluation of the defendant's mental condition is ordered pursuant to R.C. 2945.39(A), a mandatory duty rests upon the court to inform the defendant of his right of an independent evaluation and, if requested, to obtain it for him, if indigent, at public expense." It is our view that the correct interpretation is expressed by *Marshall, supra.*

R.C. 2945.39 must be construed to give effect to the legislative intent. In determining the legislative intent, a court must first look to the language of the statute itself. *Provident Bank* v. *Wood* (1973), 36 Ohio St. 2d 101, 105, 65 O.O. 2d 296, 298, 304 N.E. 2d 378, 381. The statutory language is clear. R.C. 2945.39(A) states that the trial court has discretion in whether to order one psychiatric examination or whether to order more examinations, up to a limit of three. The statute further provides that "* * * *if more than one examination is ordered* * * * [emphasis added]," the defendant may recommend an examiner he prefers. R.C. 2945.39(C) states that if the court does not designate an examiner that defendant recommended "* * * *pursuant to division (A) of this section* * * * [emphasis added]," then the defendant will be entitled to an independent psychiatric evaluation.

The conclusion that logically flows from this statutory language is that, pursuant to the statute, a defendant has the right to recommend an ex-

aminer *only* if the court orders more than one examination. If the court does order more than one examination, but refuses the recommendation of the defendant as to the examiner, only then does the duty arise for the court to inform defendant that defendant has the right to an independent psychiatric examination, which, if defendant is indigent, will be paid for at state expense.

Appellee asserts that such an argument would render R.C. 2945.39(C) a nullity. This is not the case. Division (C) operates to grant defendant an independent evaluation, *but only* if the court orders more than one examination *and* the court refuses an examiner recommended by the defendant.

The language used by the General Assembly in drafting the statute is straightforward and unambiguous. The trial court is granted the discretion[1] to decide if more than one psychiatric examination is necessary. The defendant may recommend an examiner only if the trial court orders more than one examination. If the trial court fails to pick an examiner that defendant has recommended, only then does the defendant have the right to an independent examination.

The meaning of the statute is evident. "Absent ambiguity, a statute is to be construed without resort to a process of statutory construction." *Ohio Dental Hygienists Assn.* v. *Ohio State Dental Bd.* (1986), 21 Ohio St. 3d 21, 23, 21 OBR 282, 284, 487 N.E. 2d 301, 303.

The General Assembly could easily have achieved the result urged by appellee. The language of the statute could have stated that whenever a defendant pleads not guilty by reason of insanity, the defendant is entitled to an independent psychiatric evaluation by an examiner of the defendant's choice. The legislature, however, did not choose to follow that course. We will not interpret the plain language to mean something it does not say. "* * * In examining the actual language of a statute, words should be given their common, ordinary and accepted meaning unless the legislature has clearly expressed a contrary intention." *State* v. *Singer* (1977), 50 Ohio St. 2d 103, 108, 4 O.O. 3d 237, 240, 362 N.E. 2d 1216, 1220 (citing *Youngstown Club* v. *Porterfield* [1970], 21 Ohio St. 2d 83, 86, 50 O.O. 2d 198, 200, 255 N.E. 2d 262, 264).

In support of the position that the state must notify a defendant of his right to an independent psychiatric evaluation, appellee cites the holding of *Ake* v. *Oklahoma* (1985), 470 U.S. 68. That case held that "when a defendant * * * [makes] a preliminary showing that his sanity at the time of the offense is likely to be a significant factor at trial, the [United States] Constitution requires that a State provide access to a psychiatrist's assistance on this issue if the defendant cannot otherwise afford one." *Ake, supra,* at 74. This, appellee asserts, means a defendant must be given the right to an independent psychiatric evaluation, as contemplated in R.C. 2945.39(C).

In *Ake, supra,* however, the United States Supreme Court did not say how a system of granting psychiatric evaluations should be implemented. Instead, the court left "* * * to the States the decision on how to implement this right." *Ake, supra,* at 83.

Ohio's chosen method of implementation, R.C. 2945.39, does not violate the principle that an indigent

---

[1] R.C. 2945.39(A) provides "* * * the court *may* order one or more, but not more than three, evaluations * * *." (Emphasis added.) See, also *State* v. *Keaton* (1967), 9 Ohio App. 2d 139, 38 O.O. 2d 166, 223 N.E. 2d 631.

defendant have "* * * an adequate opportunity to present * * * [his] claims fairly within the adversary system." *Ross* v. *Moffitt* (1974), 417 U.S. 600, 612. R.C. 2945.39(A) provides that a defendant will undergo a psychiatric evaluation, as required by *Ake.* The trial court, however, has discretion as to whether more than one examination need be undertaken.

In the case at bar, the trial court, pursuant to R.C. 2945.39 and the holding in *Ake, supra,* ordered a psychiatric evaluation of appellee, with results of the examination being given to both the prosecution and counsel for appellee. Simply because the result of the examination was not to appellee's liking does not automatically give appellee the right to an independent evaluation by the examiner of his choice.[2] A defendant, here appellee, does not have the right to an independent psychiatric examiner, pursuant to R.C. 2945.39(C), unless the trial court has ordered more than one psychiatric evaluation *and* the trial court has refused to appoint an examiner recommended by the defendant.

Accordingly, the judgment of the court of appeals is reversed and the judgment of the trial court is reinstated.

*Judgment reversed.*

MOYER, C.J., LOCHER and HOLMES, JJ., concur.

SWEENEY, WRIGHT and H. BROWN, JJ., dissent.

H. BROWN, J., dissenting. When the law is written so that one, because of poverty, cannot defend against criminal charges, then the law sacrifices the principle that justice should be the goal of a criminal trial.

The critical facts in the case at bar are not in dispute. The defendant was indigent. A serious issue was raised regarding the defendant's mental competency at the time he committed his alleged crimes. The defendant pled not guilty by reason of insanity. The defendant suffered from Wilson's Disease, a rare ailment which, according to his treating pediatric neurologist, made him unable to control himself and rendered him unable to refrain from wrongful conduct. However, the defense did not have the assistance of a psychiatrist and was not able to hire a psychiatrist to testify at trial. The trial court did not appoint an examiner recommended by the defendant. The only testimony by a psychiatrist was that of the examiner appointed by the court who found the defendant to be legally sane at the time of his alleged criminal acts. At the time of those acts, the defendant was sixteen years old.

The issues we should have decided are two: (1) whether, upon these facts, the defendant has been accorded a fair trial as guaranteed by the United States and Ohio Constitutions; and (2) whether Ohio statutory law denies psychiatric assistance to a defendant whose mental competency has been seriously put in issue.

## I

In *Griffin* v. *Illinois* (1956), 351 U.S. 12, 19, the Supreme Court succinctly stated the principle which should guide our determination:

"There can be no equal justice

---

[2] The parenthetical comment, made by the court of appeals and repeated in appellee's brief, that had the psychiatric evaluation of Hix turned out differently the state would have been able to undertake an additional psychiatric evaluation of Hix, is incorrect. R.C. 2945.39 authorizes only the court to order a psychiatric examination.

where the kind of trial a man gets depends upon the amount of money he has."

*Griffin, supra,* involved the provision of a transcript for use on appeal to a defendant who could not afford one.

In *Gideon* v. *Wainright* (1963), 372 U.S. 335, the Supreme Court held that in all criminal prosecutions, the accused shall enjoy the right to the assistance of counsel and, if counsel cannot be afforded, counsel is to be provided to the accused. Justice Black wrote:

"From the very beginning, our state and national constitutions and laws have laid great emphasis on procedural and substantive safeguards designed to assure fair trials before impartial tribunals in which every defendant stands equal before the law. This noble ideal cannot be realized if the poor man charged with crime has to face his accusers without a lawyer to assist him." *Id.* at 344.

The question logically follows: What good is the right to counsel if the fundamental issue at trial is the accused's mental competency and if the accused, because of poverty, has no means to secure psychiatric assistance to aid in his defense?

That question was addressed by the United States Supreme Court in *Ake* v. *Oklahoma* (1985), 470 U.S. 68. The *Ake* court stated:

"The issue in this case is whether the Constitution requires that an indigent defendant have access to the psychiatric examination and assistance necessary to prepare an effective defense based on his mental condition, when his sanity at the time of the offense is seriously in question." *Id.* at 70.

Justice Marshall, writing for a majority of seven, explained why psychiatric assistance must be provided to an indigent defendant:

"The Court has long recognized that when a State brings its judicial power to bear on an indigent defendant in a criminal proceeding, it must take steps to assure that the defendant has a fair opportunity to present his defense. This elementary principle, grounded in significant part on the Fourteenth Amendment's due process guarantee of fundamental fairness, derives from the belief that justice cannot be equal where, simply as a result of his poverty, a defendant is denied the opportunity to participate meaningfully in a judicial proceeding in which his liberty is at stake." *Id.* at 76.

Justice Marshall concluded:

"The foregoing leads inexorably to the conclusion that, *without the assistance of a psychiatrist to conduct a professional examination on issues relevant to the defense, to help determine whether the insanity defense is viable, to present testimony, and to assist in preparing the cross-examination of a State's psychiatric witnesses, the risk of an inaccurate resolution of sanity issues is extremely high.* With such assistance, the defendant is fairly able to present at least enough information to the jury, in a meaningful manner, as to permit it to make a sensible determination." (Emphasis added.) *Id.* at 82.

The majority fails to confront the fundamental legal principle which underlies *Ake* and which is the force behind the *Ake* decision.[3] A defendant does not have the assistance of a psychiatrist when the sole testifying

---

[3] As stated by Justice William J. Brennan, Jr. in Law and Psychiatry Must Join in Defending Mentally Ill Criminals (1963), 49 A.B.A.J. 239, 242:

"When counsel for an indigent believes that the accused's state of mind at the time of the offense is seriously in question, he should be able to seek the services of a

psychiatrist is the one appointed by the court; when that psychiatrist finds sanity; and when the psychiatric testimony is presented, unrebutted, by the prosecution to the finder of fact.

The criminal trial process is an adversarial one and the law recognizes the right of both the state and the defendant to marshal and present evidence in a partisan fashion.[4] This adversarial process is destroyed when mental competency is at issue and the defendant lacks the means to compete by hiring expert assistance. Who doubts that the defendant in the present case would have hired a psychiatrist to assist in the defense if the defendant had not been impoverished?

Although the principle asserted in *Ake, Gideon,* and *Griffin, supra,* may seem to be of relatively recent vintage, it is not. It is a principle which lies at the heart of criminal justice, as recognized by Chief Judge Cardozo in *Reilly* v. *Berry* (1929), 250 N.Y. 456, 461, 166 N.E. 165, 167; when he said:

"The Legislature had in mind what is a matter of common knowledge, that *upon the trial of certain issues, such as insanity* or forgery, *experts are often necessary both for prosecution and for defense.* In these and like cases, *a defendant may be at an unfair disadvantage, if he is unable because of poverty to parry by his own witnesses the thrusts of those against him."* (Emphasis added.)

The American Bar Association Standards For Criminal Justice (2 Ed. 1986 Supp., Vol. I) 5.19-5.21, includes the following commentary under Standard 5-1.4:

"Quality legal representation cannot be rendered either by defenders or by assigned counsel unless the lawyers have available for their use adequate supporting services. These include *inter alia* expert witnesses capable of testifying at trial and at other proceedings, personnel skilled in social work and related disciplines to provide assistance at pretrial release hearings and at sentencings, and trained investigators to interview witnesses and to assemble demonstrative evidence. *The quality of representation at trial, for example, may be excellent and yet valueless to the defendant if the defense requires the assistance of a psychiatrist* or handwriting expert *and no such services are available.*

"* * *

"In the absence of statutory provisions, some courts have recognized a defendant's constitutional right to expert services at state expense. Thus, the appointment in Illinois of a document examiner and in New Jersey of an expert on the effects of alcohol have been justified on constitutional grounds. As stated by the United States Court of Appeals for the District of Columbia Circuit, *the test is 'whether the defendant is financially unable to obtain the required service*

---

psychiatrist who would undertake an examination free of charge."

See, also, Fourteenth Amendment—Due Process and an Indigent's Right to Court-Appointed Psychiatric Assistance in State Criminal Proceedings (1985), 76 J. Crim. L. & Criminology 1065; Kamisar, LaFave & Israel, Modern Criminal Procedure (6 Ed. 1986), notes to *Ake* v. *Oklahoma* and other cases concerning indigent defendant's right to expert services.

[4] See Showalter & Fitch, Objectivity and Advocacy in Forensic Psychiatry after *Ake* v. *Oklahoma* (Summer 1987), J. Psychiatry & L. 177. See, also, Slovenko, Psychiatry and Law (1973) 20, quoting the late Judge Jerome Frank as follows:

" 'The best way for a court to discover the facts in a suit is to have each side strive as hard as it can, in a keenly partisan spirit, to bring to the court's attention the evidence favorable to that side * * *.' "

*himself, and whether the service is necessary to the preparation and presentation of an adequate defense.'"* (Emphasis added in part.) (Citations omitted.)[5]

In the present case, psychiatric assistance was necessary to the defendant and he did not have it. Thus the defendant has not been accorded a fair trial.

## II

Recognizing the plight of an impoverished defendant in cases where mental competency is an issue, the Ohio General Assembly enacted R.C. 2945.39 which gives the defendant a right to psychiatric assistance at public expense if the court fails to appoint at least one examiner who has been recommended by the defendant. Nevertheless, the majority claims that the defendant has no right to psychiatric assistance under R.C. 2945.39 unless the court appoints two or more examiners. The majority makes repeated claims that the statutory language clearly supports its position. However, I do not believe that R.C. 2945.39 supports the majority. Nor do I think that a statute should be interpreted to violate the United States Constitution as expostulated in *Ake, supra.*

R.C. 2945.39(C) provides in part:

"If the court does not designate an examiner recommended by the defendant pursuant to division (A) of this section, the court shall inform the defendant that he may have independent expert evaluation and that if he is unable to obtain independent expert evaluation, it will be obtained for him, at public expense if he is indigent."

The undisputed fact is that the court, under division (A) of R.C. 2945.39, *did not* designate an examiner recommended by the defendant.

The majority seeks to circumvent the language used by the legislature by stating (which the statute does not) that a defendant's right to obtain an expert comes into effect only if the court appoints two or more examiners and fails to take the recommendation of the defendant as to one of them. There are logical flaws in the majority's interpretation. First, if two or more examiners are appointed, the prosecutor and defendant must each be allowed to recommend one of the examiners, pursuant to the last sentence of R.C. 2945.39(A). We should not presume that a court will reject these recommendations. Thus, there would be no need for the provision in R.C. 2945.39(C) according to

---

[5] This court has itself, as recently as October 1987, recognized the need of an indigent defendant for psychiatric assistance. When we adopted C.P. Sup. R. 65, 33 Ohio St. 3d xl, we also adopted the Subcommittee Comments accompanying the rule which state:

"We reiterate the proposition adopted by other national standards on defense services that *quality representation cannot be rendered by assigned counsel unless the lawyers have available for their use adequate supporting services.* These services may include:

" '* * * expert witnesses capable of

testifying at trial and at other proceedings, personnel skilled in social work and related disciplines to provide assistance at pretrial release hearings and at sentencings, and trained investigators to interview witnesses and to assemble demonstrative evidence.' ABA Standards, 5-1.4, Comm., at 5.19-5.20; see, also, Ohio R.C. 2929.024." (Emphasis added.) 33 Ohio St. 3d at xlviii.

C.P. Sup. R. 65 is directed to the defense of indigents charged with a capital offense, but the principle we then approved, but now seem to abandon, is applicable to this case.

the interpretation given by the majority.

Second, the language in R.C. 2945.39(C) is not limited to situations where two or more examiners are appointed. It refers to designations under division (A), and not simply to designations under the last sentence of division (A). If only one examiner is appointed, the examiner might or might not be one recommended by the defendant. It is also possible that the court will not appoint an examiner and that the prosecution will engage its own alienists. As the majority notes, R.C. 2945.39(A) uses the discretionary "may" with respect to court-appointed examiners. If no examiner is appointed and the state hires its own alienists, the reading given to the statute by the majority would also force the indigent defendant to trial without any chance to rebut the state's case.

The important point is that, whether no examiner, one examiner or more than one examiner is appointed under division (A), R.C. 2945.39(C) expressly provides that expert evaluation must be obtained for the defendant at public expense if an examiner recommended by the defendant has not been appointed.

Even if R.C. 2945.39 could be said to be ambiguous and thus open to the interpretation the majority has given to it, the law is well settled that statutes should be construed in a manner to comport with constitutional requirements. *State* v. *Young* (1988), 37 Ohio St. 3d 249, 525 N.E.2d 1363. We should interpret R.C. 2945.39 in the light of *Ake* and accord to the defendant the right to the psychiatric assistance which the United States Constitution requires.

Further, the majority claims too much in footnote 2 of its opinion when it attacks a significant point made by the court of appeals below. Footnote 2 states:

"The parenthetical comment, made by the court of appeals and repeated in appellee's brief, that had the psychiatric evaluation of Hix turned out differently the state would have been able to undertake an additional psychiatric evaluation of Hix, is incorrect. R.C. 2945.39 authorizes only the court to order a psychiatric examination."

However, R.C. 2945.39(C) provides:

"Neither the appointment nor the testimony of an examiner appointed under this section precludes the prosecutor or defense counsel from calling other witnesses to testify on the insanity issue."

Thus it is apparent that a prosecutor who is dissatisfied with the court-appointed examiner can hire another. So may the defendant, if the defendant can afford one. The inequity to an indigent defendant is obvious. It is this precise inequity which the legislature sought to remedy when it gave the indigent defendant the right to obtain psychiatric assistance at public expense under R.C. 2945.39(C).

The distinction between a court-appointed examiner and psychiatric assistance (*i.e.*, expert evaluation) should be drawn.[6] R.C. 2945.39(C) is basically a grant of psychiatric assistance. R.C. 2945.39(C) does not transform the expert selected by defendant into a court-appointed examiner, even under the majority's interpretation. The right to recommend a court-appointed examiner and the right to expert evaluation are separate matters, though the majority appears

[6] Goldstein & Fine, The Indigent Accused, the Psychiatrist, and the Insanity Defense (1962), 110 U. Pa. L. Rev. 1061, 1068.

to have confused the two concepts and to have used them interchangeably.

The Constitution does not require a state to purchase for the indigent defendant all the assistance that a wealthy defendant can buy. That is not the issue in this case.

What is required is that the defendant not be deprived of a fair trial because of poverty. Fundamental fairness entitles indigent defendants to an adequate opportunity to present their claims within the adversary system, *Ross* v. *Moffitt* (1974), 417 U.S. 600, 612. The majority has made a statutory interpretation which violates fundamental fairness as well as the language and logic of the statute itself.

I would affirm the unanimous decision rendered in the court of appeals below.

SWEENEY and WRIGHT, JJ., concur in the foregoing dissenting opinion.