OPINION
Defendant-appellant Jennifer Perry appeals from the August 29, 2000, Judgment Entries of the Richland County Court of Common Pleas. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE
On January 6, 2000, the Richland County Grand Jury indicted appellant in Case No. 00-CR-41D on one count of theft in violation of R.C.2913.02(A), a felony of the fifth degree. Approximately five weeks later, on February 10, 2000, appellant also was indicted in Case No. 00-CR-075D on one count of receiving stolen property in violation of R.C. 2913.51(A), a felony of the fifth degree. At her arraignment on both cases on March 20, 2000, a plea of not guilty was entered on behalf of appellant.[1] Subsequently, on March 30, 2000, appellant filed a written plea of not guilty by reason of insanity and request for competency evaluation in the two cases.
Thereafter, pursuant to court order, appellant was evaluated by the Forensic Diagnostic Center for the purpose of determining appellant's competence to stand trial and her sanity at the time of commission of the offenses in the two cases. As memorialized in a report dated April 25, 2000, James J. Karpawich, Ph.D., a Clinical Psychologist, found, with reasonable scientific certainty, that appellant "at the time of the present offenses, was not suffering from a severe mental disease or defect which caused her not to know the wrongfulness of her actions." In a separate report also dated April 25, 2000, Dr. Karpawich found that appellant was competent to stand trial since she understood "the nature and objectives of the proceeding against her" and was presently able to assist her attorney in her defense. Following the filing of the two reports, appellant, on May 17, 2000, filed a motion in Case Nos. 00-CR-41D and 00-CR-75D requesting a second psychological examination at State expense by a licensed psychiatrist and/or psychologist.
Thereafter, a Bill of Information was filed on May 22, 2000, in Case No. 00-CR-298D accusing appellant of theft in violation of R.C. 2913.02(A), a felony of the fifth degree. At a hearing held on the same date and as memorialized in two Judgment Entries filed on May 24, 2000, the trial court found appellant competent to stand trial in Case Nos. 00-CR-41D and 00-CR-75D. The trial court further denied appellant's request for a second psychological evaluation since appellant was "unable to identify any specific deficit" in Dr. Karpawich's report. Transcript of May 22, 2000, hearing at 3.[2] Appellant then entered a plea of not guilty to the charge contained in the Bill of Information.[3]
After a Motion for Joinder was filed by appellee on June 8, 2000, the trial court, pursuant to a June 13, 2000, Judgment Entry, ordered that Case Nos. 00-CR-41D, 00-CR-78D and 00-CR-298D be joined for purposes of trial. Thereafter, at a hearing held on June 19, 2000, appellant entered pleas of no contest to the charges contained in all three cases. As memorialized in Judgment Entries filed on June 20, 2000, the trial court found appellant guilty of all three charges and ordered a presentence investigation.
On August 28, 2000, appellant filed a "Motion to Vacate Prior Plea of No Contest and/or in the Alternative, Motion Requesting a Re-Evaluation of Defendant's Competency." Appellant, in her motion, which was filed in Case Nos. 00-CR-41D and 00-CR-75D, argued that her motion should be granted "in light of defendant's [appellant's] recent suicide attempt while incarcerated in the Richland County Jail and her subsequent assessment and confinement at Massillon Psychiatric Center." Shortly after her June 19, 2000, no contest pleas, appellant had been arrested for additional crimes and confined to the Richland County Jail. Attached to appellant's motion were records from Massillon Psychiatric Center. At a hearing held on August 28, 2000, appellant's counsel voiced her concerns over appellant's competency, stating as follows:
 MS. MAYER: The only, as I said before, when she originally requested a competency, chance for another competency at State expense, I'm not a psychiatrist or psychologist, it's just my opinion in working with Miss Perry, it's been quite difficult to make sure she understands and is aware, as far as some of the consequences of her actions and her statements, and also based on the fact that just recently she was sent to Massillon. She did have a time in Massillon. . . .
 MS. MAYER: There is some indication in the report that she had problems with reality, and statements such as that, which again, renewed my objection, or renewed my fact, my beliefs that I really don't feel comfortable that she is competent to have changed her plea and to knowingly and voluntarily know what's going on or to assist me in her cases.
Transcript of August 28, 2000, hearing at 2 — 3.
However, the trial court denied appellant's August 28, 2000, motion, stating on the record as follows:
 THE COURT: You provided me a copy of her Massillon [psychiatric] chart, and basically what they say, I guess she was there about a week. They discharged her back to jail saying, Jennifer will be returned to jail with appropriate medications given. Jennifer would benefit from individual counseling regarding her depression over the fact that her son committed suicide. Jennifer would also benefit from counseling regarding her alcohol abuse. Jennifer will also need medication monitoring and will need to establish adequate coping skills. Uniformly throughout these psychological treatments and evaluations they talked about depression that she justifiably feels from the fact that her son did commit suicide, and how that's caused her problems. But I don't see anything that indicates that she was so mentally ill that she was unable to determine what she was doing. I think we addressed that at some length previously at her change of plea and the consideration of her motion upon the basis of competency. I don't see anything in this Massillon evaluation which says that she doesn't understand what she is doing. It talks about her depression and the need for her medications and so forth, but she's been seemingly uncooperative with those folks, too, the counselors and medication providerrs [sic]. She has not been very cooperative. It's been hard to get to comply with any sort of treatment plan or supervision plan. I'm not inclined, therefore, to let her have her plea back. I think she knew what she was doing when she did it. I don't think she has a mental illness that would prevent her from doing that and I haven't seen any information in the information provided to me that she needs to be re-evaluated. She still continues to be depressed over the suicide of her son a year or so ago.
Transcript of August 28, 2000, hearing at 3-5. As memorialized in Sentencing Entries filed in all three cases on August 29, 2000, the trial court then sentenced appellant to two years of community control under specified terms and conditions.
Subsequently, appellant was charged with violating the terms and conditions of her community control. At the probation violation hearing on September 21, 2000, appellant admitted to one of the community control violations and the remaining violations were dismissed by the trial court. Prior to being sentenced on the violations, appellant once again raised the issue of her competency to stand trial. The following is an excerpt from the September 21, 2000, hearing:
 THE COURT: Is there anything else that you want to say before I —
 MS. MAYER [Appellant's counsel]: Yes, actually, I do, just so you are aware of, well, possibly in mitigation of sentence. Right now her parents are in the process of filing for guardianship through Probate Court, now that her cases are technically finalized, in order that eventually they can request a civil commitment once that guardianship is granted. This is a Statement of Expert Evaluation, if I may approach.
THE COURT: Uhm-hum.
 MS. MAYER: Dr. Haar has completed it from the center. Attorney Patty Kitzler is assisting her parents with this particular guardianship application in which he notes that Ms. Perry is mentally impaired and is unable to conduct her business and care for herself properly. And I just wish that the court would take that into consideration; that they are attempting to obtain this guardianship so that a civil commitment can be proceeded with, as Ms. Perry does need some psychiatric assistance.
 THE COURT: Is there anything else that you wanted to tell me?
MS. MAYER: No, Your Honor, that is it.
Transcript of September 21, 2000, hearing at 5-6. Pursuant to Judgment Entries filed on September 21, 2000, the trial court then sentenced appellant to six months in prison on each case and ordered that the three sentences be served concurrently. At the September 21, 2000, hearing, the trial court indicated on the record that if appellant was subject to a civil commitment, it would grant appellant a judicial release from prison so that appellant could be committed to a mental institution.
Appellant now prosecutes her appeal, raising the following assignments of error:
ASSIGNMENT OF ERROR I
 THE TRIAL COURT ERRED WHEN IT DENIED THE DEFENDANT'S MULTIPLE REQUESTS FOR AN INDEPENDENT INCOMPETENCY AND SANITY EVALUATION AT STATE'S EXPENSE WHICH WERE REQUESTED AT ALL STAGES OF THE COURT PROCESS.
 ASSIGNMENT OF ERROR II
 THE TRIAL COURT ERRED WHEN IT FAILED TO ORDER A RE-EVALUATION OF THE DEFENDANT'S COMPETENCY IN LIGHT OF EVIDENCE OF BEHAVIOR THAT OCCURRED SUBSEQUENT TO THE INITIAL STATE EVALUATION AND PRIOR TO THE SENTENCING IN WHICH THE DEFENDANT ENGAGED IN OPEN, OBVIOUS AND CONTINUOUS THIEVING ACTIVITIES, A BOND REVOCATION, AN ATTEMPTED SUICIDE, AN INVOLUNTARY COMMITMENT TO A PSYCHIATRIC INSTITUTION AND INAPPROPRIATE COURT ROOM DEMEANOR AND BEHAVIOR.
 ASSIGNMENT OF ERROR III
 THE TRIAL COURT ERRED IN FAILING TO HAVE THE DEFENDANT EVALUATED FOR COMPETENCY AND SANITY REGARDING CASE NO. 00-CR-298D, WHICH WAS NOT CONSIDERED IN THE STATE'S EVALUATION BY DR. KARPAWICH AND THE DEFENDANT PROCEEDED ON A BILL OF INFORMATION IN THAT CASE AFTER THE COURT DETERMINED THE COMPETENCY ISSUE IN THE OTHER PENDING CASES.
 I
Appellant, in her first assignment of error, argues that the trial court erred in denying appellant's request for an independent psychological examination. As is stated above, after receiving Dr. Karpawich's report, appellant, on May 17, 2000, filed a motion requesting a second, independent psychological examination at State expense to determine appellant's competency and sanity at the time of the commission of the offenses. However, the trial court denied such motion, stating in a May 23, 2000, Order that appellant had not "identified any deficiency in that [Dr. Karpawich's] evaluation other than it didn't result in the finding she wanted."
In State v. Marshall (1984), 15 Ohio App.3d 105, 107, the court held both that a defendant has no absolute right to an independent psychiatric evaluation and that R.C. 2945.37, 2945.371 and 2945.39[4] make no provision for such an evaluation. See also State v. Corethers, (1993)90 Ohio App.3d 428, 434 and State v. Hix (1988), 38 Ohio St.3d 129. Since appellant, therefore, had no absolute right to an independent evaluation and since, as noted by the trial court, appellant failed to identify any deficiency in Dr. Karpawich's two reports, we find that the trial court did not err in overruling appellant's request for independent competency and sanity evaluations.
Appellant's first assignment of error is, therefore, overruled.
 II
Appellant, in her second assignment of error, contends that the trial court, prior to sentencing appellant, erred when it failed to order a reevaluation of appellant's competency since appellant, after the original finding of competency, "demonstrated behavior which called into question continued competence."
As was previously noted, appellant, on August 28, 2000, filed a motion seeking to vacate her prior no contest pleas or, in the alternative, seeking a reevaluation of appellant's competency. Appellant, in her motion, indicated as follows:
 The defendant requests the Court vacate her previous pleas of no contest and further requests the Court authorize an evaluation of the Defendant by a licensed psychiatrist and/or licensed psychologist to make a determination regarding the Defendant's overall competency to assist her counsel with her defense and to make knowing and voluntary decisions regarding her case. This request is in light of defendant's recent suicide attempt while incarcerated in the Richland County Jail and her subsequent assessment and confinement at Massillon Psychiatric Center. The confinement came shortly after defendant changed her pleas from Not Guilty to No Contest. Defendant has returned to the Richland County Jail and once again has been placed in D-cell isolation. Enclosed under separate cover, confidential Massillon medical records, Exhibit A.
Moreover, at the September 21, 2000, probation violation hearing, appellant submitted an evaluation prepared by Dr. Haar, a licensed physician, indicating that appellant was mentally impaired and unable to care for herself.[5]
The test to determine whether a defendant is competent to stand trial "must be whether he has sufficient present ability to consult with his attorney with a reasonable degree of rational understanding and whether he has a rational as well as factual understanding of the proceedings against him." State v. Berry (1995), 72 Ohio St.3d 354, 359, citingDusky v. United States (1960), 362 U.S. 402. The right to a hearing on the issue of incompetency rises to the level of a constitutional guarantee where the record contains "sufficient indicia of incompetence," such that an inquiry into the defendant's competency is necessary to ensure the defendant's right to a fair trial. Id.
R.C. 2945.37, which protects the right of a criminal defendant not to be tried or convicted while incompetent, states, in pertinent part, as follows:
 (B) In a criminal action in a court of common pleas, a county court, or a municipal court, the court, prosecutor, or defense may raise the issue of the defendant's competence to stand trial. If the issue is raised before the trial has commenced, the court shall hold a hearing on the issue as provided in this section. If the issue is raised after the trial has commenced, the court shall hold a hearing on the issue only for good cause shown or on the court's own motion.
Pursuant to 2945.371(A), "[i]f the issue of a defendant's competence to stand trial is raised or if a defendant enters a plea of not guilty by reason of insanity, the court may order one or more evaluations of the defendant's present mental condition or, in the case of a plea of not guilty by reason of insanity, of the defendant's mental condition at the time of the offense charged." [Emphasis added.] No competency evaluation, therefore, is required by R.C. 2945.371 every time that the issue of a defendant's mental condition is raised. Rather, "the wording of the statute implies that the ordering of an examination is a matter within the discretion of the trial court." State v Bailey (1992),90 Ohio App.3d 58, 67.
In order to find that the trial court abused its discretion in denying appellant's request for a competency re-evaluation, we must find that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983),5 Ohio St.3d 217.
Upon our review of the record, we find that the trial court did not abuse its discretion in denying appellant's repeated requests for a competency revaluation prior to sentencing appellant on September 21, 2000. As noted by the trial court at the August 28, 2000, hearing, there is nothing in the records from appellant's evaluation from Massillon Psychiatric Center indicating that appellant "was so mentally ill that she was unable to determine what she was doing." Transcript of August 28, 2000, hearing at 4. Appellant's own statements at the hearing on August 28, 2000, support a finding of competency. The following is an excerpt from the August 28, 2000, hearing:
 MS. PERRY: Before my son died, Your Honor, I never was in trouble one time in 43 years, and then my oldest son just looked at me one day and said, You're trying to destroy yourself, and I didn't even know until he said that, and then it just hit me, true. I had never done anything in my entire life.
Transcript of August 28, 2000, hearing at 7. The following colloquy transpired at the August 28, 2000, hearing:
 THE COURT: Miss Perry [appellant], I'm inclined because of all the lack of cooperation you've given people to send you to prison. I'm not going to send you to prison, though, because your folks are willing to work with you and the probation officer is willing to try. Now you listen to me very carefully.
MS. PERRY: Yes, sir.
 THE COURT: If you don't do what they tell you to do —
MS. PERRY: I will.
 THE COURT: — if you don't take your medicine, if you're not where you're supposed to be, you're going to go to prison.
MS. PERRY: Let me tell you —
 THE COURT: So it's going to be entirely up to you whether you end up in prison or not, but I'm telling you now we're not going to be playing games with you, chasing all over the community.
 MS. PERRY: I've never denied my meds, Your Honor, never once.
 THE COURT: What's your explanation for why you were doing all the shoplifting?
 MS. PERRY: I told you, it was just, like I said, you probably remember him [appellant's son].[6]
THE COURT: Yes, I remember him.
MS. PERRY: Because he was in front of you.
THE COURT: Yes.
 MS. PERRY: Before the, Your Honor, in 43 years I never did one thing ever and it's just, like I said, I think my son said, You're trying to destroy yourself.
Transcript of August 28, 2000, hearing at 10-11. As evidenced by the above and by appellant's statements on the record at the various hearings in this matter, the record supports the trial court's determination that appellant had a rational and factual understanding of the proceedings against her.
While appellant, as evidenced by the Massillon evaluation and Dr. Haar's evaluation, may be mentally ill, the term "mental illness' does not necessarily equate with the definition of legal incompetency. SeeBerry, supra. Furthermore, upon review, we find that the record is devoid of any objective indicia to demonstrate good cause for ordering a competency re-evaluation. While appellant, in her brief, emphasizes that appellant exhibited "poor courtroom behavior and demeanor which deteriorated with each subsequent hearing,[7]" we note that appellant's behavior and demeanor are not on the record and, therefore, cannot be considered by this Court. In short, we find that the record does not contain "sufficient indicia of incompetency" so as to require a re-evaluation of appellant's competency.
Based on the foregoing, appellant's second assignment of error is overruled.
 III
Appellant, in her third assignment of error, argues that the trial court erred in failing to have appellant evaluated for competency and sanity in Case No. 00-CR-298D. While appellant, as previously noted, was found competent to stand trial and sane with respect to Case Nos. 00-CR-41D and 00-CR-75D, no competency or sanity evaluation was performed with respect to Case No. 00-CR-298D.
Pursuant to Judgment Entries filed on June 13, 2000, the trial court ordered that all three cases in this matter be joined for purposes of trial. Therefore, the competency and sanity evaluations that were performed in Case Nos. 00-CR-41D and 00-CR-75D became a part of the record of Case No. 00-CR-298D.
We concur with appellee that the trial court did not abuse its discretion in declining to order separate competency and sanity evaluations in Case No. 00-CR-0298D. As was previously stated, Dr. Karpawich, in his April 25, 2000, report found that appellant was sane at the time that she committed the offenses in Case Nos. 00-CR-41D and 00-CR-75D. Based on the proximity in time of the offenses in the two cases to the offense in Case No. 00-CR-0298D[8] and the fact that, at the time the Bill of Information was filed on May 22, 2000, in Case No. 00-CR-298D, Dr. Karpawich's competency and sanity evaluations in the other two cases were less than one month old, no necessity existed for any additional psychiatric evaluations of appellant to be performed. Furthermore, as is stated above, the record does not contain "sufficient indicia of incompetency" so as to require an additional competency evaluation of appellant.
Appellant's third assignment of error is, therefore, overruled.
Accordingly, the judgment of the Richland County Court of Common Pleas is affirmed.
 JUDGEMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Richland County Court of Common Pleas is affirmed. Costs to appellant.
 _____________________ By Edwards, P.J.
Gwin, J. and Boggins, J. concurs
[1] A written "Waiver of Presence of Defendant at Arraignment" signed by appellant was filed the same day.
[2] An Order overruling appellant's request for a second psychological evaluation was filed on May 23, 2000.
[3] A Waiver of Indictment signed by appellant was filed on May 23, 2000.
[4] The above statutes govern questions of competency to stand trial and sanity at the time of the offense.
[5] Dr. Haar's evaluation, which was dated August 15, 2000, was prepared in response to an application for guardianship of appellant filed in the Probate Court of Richland County.
[6] As is noted above, one of appellant's sons committed suicide.
[7] Appellant specifically points to appellant's behavior in spinning in the jury chairs, moving from chair to chair and playing with the curtains in the jury box.
[8] Whereas the offense in Case No. 00-CR-41D occurred in November of 1999, the offense in Case No. 00-CR-78D occurred in December of 1999 and the offense in Case No. 00-CR-0298D took place in January of 2000.