[Cite as *State v. Nelson*, 2014-Ohio-5757.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 14AP-229 |
| v. | : | (C.P.C. No. 13CR-4040) |
| Tyvaughn M. Nelson, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on December 30, 2014

*Ron O'Brien*, Prosecuting Attorney, and *Michael P. Walton*, for appellee.

*Yeura R. Venters*, Public Defender, and *Timothy E. Pierce*, for appellant.

APPEAL from the Franklin County Court of Common Pleas

BRUNNER, J.

{¶ 1} Defendant-appellant, Tyvaughn M. Nelson, appeals a judgment of the Franklin County Court of Common Pleas rendered on February 20, 2014, which required him, after having received two independent competency evaluations, to undergo a four-month-long course of treatment and re-evaluation through the Ohio Department of Developmental Disabilities ("ODDD") to permit the trial court to determine whether Nelson could become competent to stand trial within one year. For the following reasons, we affirm.

I. FACTS AND PROCEDURAL HISTORY

{¶ 2} On July 29, 2013, a Franklin County Grand Jury indicted Nelson for aggravated burglary, a felony of the first degree, with a firearm specification. Nelson pled not guilty, and the court appointed a public defender to represent him. Then, on

October 16, 2013, Nelson filed a motion raising questions about his competence to stand trial and requesting an examination. The state agreed that an examination would be appropriate, and the trial court ordered the assessment. Douglas Pawlarczyk, Ph.D., examined Nelson and authored a report. Due to the confidential nature of the evaluation, copies were provided to chambers on December 2, 2013, and were not filed on the public docket.

{¶ 3} On December 19, 2013, the trial court held a hearing on Nelson's motion concerning his competency to stand trial. The parties stipulated to Dr. Pawlarczyk's report, and the trial court summarized and adopted, as findings of the court, the following from the doctor's opinion:

> It's my opinion with a reasonable degree of psychological certainty that Tyvaughn Nelson does not have a serious mental illness. He is mentally retarded. It is also my opinion that he is presently incapable of understanding the nature and objectives of the legal proceedings against him and is incapable of assisting his attorney in his own defense.

(Dec. 19, 2013 Tr. 2-3.)[1] However, Dr. Pawlarczyk's report did not address whether Nelson could be restored to competency, that is, aided so as to be competent by treatment. Further, Dr. Pawlarczyk, in his report, expressed the view that, at times during the examination, Nelson may not have been putting his full effort into answering questions. The state requested that ODDD conduct a second evaluation, and Nelson's counsel did not object to the request.

{¶ 4} The trial court, by entry filed December 20, 2013, ordered the second evaluation. The entry was approved and signed by both parties. Pursuant to that order, Nelson was examined a second time, this time by Ranju M. Kapahi, Ph.D., of ODDD. The chambers of the trial court received Dr. Kapahi's report on February 10, 2014. Dr. Kapahi concluded:

---

[1] This court notes that the United States Supreme Court has recently chosen to substitute the term "intellectual disability" for "mental retardation." *Hall v. Florida*, 134 S.Ct. 1986, 1990 (2014). While this court agrees that sensitivity is due in any discussion of mental disabilities, the Ohio Revised Code and the records in this case use the term "retarded." Thus, for clarity, this court shall do so also, but no pejorative connotation from such use is intended by the appellate court.

> [I]t cannot be determined at this time whether there is a substantial probability that the defendant will become competent to stand trial within the time period allotted by law. Hence, in accordance with Ohio Revised Code 2945.38(B)(1)(a), continuing evaluation and treatment for a period not to exceed four months may be helpful in determining whether there is a substantial probability that Mr. Nelson will become competent to stand trial within the time period allotted by law if Mr. Nelson is provided with a course of treatment.

(Dr. Kapahi Report at 9.) Like Dr. Pawlarczyk, Dr. Kapahi noted that some of Nelson's poor performance during Dr. Kapahi's competency evaluation might have been due to lack of effort rather than lack of intellectual capacity. In his report, Dr. Kapahi stated:

> [T]here are indications that Mr. Nelson may not have put forth maximum effort due to his tendency to give up easily, his lack of persistence on difficult tasks and especially when tested on his competency to stand trial. It is unclear, at this time, whether he lacks the necessary knowledge of the legal concepts and proceedings or was essentially unwilling to fully participate in this evaluation, at the time.

(Dr. Kapahi Report at 9.)

{¶ 5} On February 12, 2014, the trial court held a second hearing on Nelson's competency to stand trial. The parties and the trial court discussed Dr. Kapahi's report on the record, but the parties did not stipulate to the report or otherwise take steps to formally admit it into evidence. Defense counsel for Nelson stated on the record that she had spoken to the first evaluator, Dr. Pawlarczyk, who informed her that Nelson could not be rendered competent to stand trial, even with treatment.

{¶ 6} The trial court noted that in the second report to the court, the one reporting on Dr. Kapahi's evaluation of Nelson, Dr. Kapahi suggested that a four-month evaluation and treatment program might yield a different result on the question of Nelson's competence. At that hearing and in response, the state informed the trial court that, in its view, no entity was available to restore Nelson to competence. The trial court voiced concern that Nelson would be released "without any controls [or] any supervision," but orally stated that Nelson was "nonrestorable" and that it would dismiss the charge against him. (Feb. 12, 2014 Tr. 5.) No journal entry was filed to that effect.

{¶ 7}   Two days later, on February 14, 2014, the trial court held another hearing, explaining "[w]e are here today based upon a request by the State that Mr. Nelson not be released and that he be transferred to [a developmental center] for a period not to exceed four months for an evaluation to determine whether or not he is restorable." (Feb. 14, 2014 Tr. 2.)   The assistant prosecutor then stated on the record that he had spoken with representatives of the probation department and ODDD and learned of the option, under R.C. 2945.38(B)(1)(a), to order Nelson to undergo up to four months of treatment and evaluation to allow the court and parties to gain an understanding of whether he could be restored to competence.   Accordingly, the trial court determined not to dismiss the case and, over Nelson's objection, ordered Nelson to be treated and evaluated at the Warrensville Developmental Center for a time not to exceed four months.   Thereafter, on February 20, 2014, the trial court entered a written order referring Nelson for treatment and a third evaluation.

{¶ 8}   On March 21, 2014, Nelson filed a notice of appeal.

## II.  ASSIGNMENTS OF ERROR

{¶ 9}   Nelson presents us with two assignments of error for review:

> [I.] The trial court violated Appellant's right to due process of law memorialized in the Fourteenth Amendment of the United States Constitution and Article I, Section 16 of the Ohio Constitution when it failed to discharge him from the legal proceedings below pursuant to R.C. 2945.38(B)(2) inasmuch as the only evidence lawfully admitted indicated that Appellant was not competent to stand trial and not restorable to competency.

> [II.] The trial court's unauthorized order made pursuant to R.C. 2945.371(H) as well as its consideration of the report prepared thereunder resulted in the issuance of a void judgment entry on February 20, 2014. Because this violated Appellant's right to due process of law memorialized in the Fourteenth Amendment of the United States Constitution and Article I, Section 16 of the Ohio Constitution the February 20, 2014 entry must be vacated.

## III.  DISCUSSION

### A.  First Assignment of Error

{¶ 10} For his first assignment of error, Nelson argues the trial court erred when it ordered him to undergo continuing evaluation and treatment for a period not to exceed four months, pursuant to R.C. 2945.38(B)(1)(a), and that it should have instead discharged him, pursuant to R.C. 2945.38(B)(2).  This argument relies on an asserted premise that "the only evidence lawfully admitted indicates that [Nelson] was not competent to stand trial and not restorable to competency."  As this asserted premise is inaccurate, we disagree with the conclusions therefrom that Nelson seeks to draw.

{¶ 11} R.C. 2945.38(B)(2) provides, in relevant part:

> If the court finds that the defendant is incompetent to stand trial and that, even if the defendant is provided with a course of treatment, there is not a substantial probability that the defendant will become competent to stand trial within one year, the court shall order the discharge of the defendant.

Conversely, R.C. 2945.38(B)(1)(a) provides:

> If * * * the court is unable at that time to determine whether there is a substantial probability that the defendant will become competent to stand trial within one year if the defendant is provided with a course of treatment, the court shall order continuing evaluation and treatment of the defendant for a period not to exceed four months to determine whether there is a substantial probability that the defendant will become competent to stand trial within one year if the defendant is provided with a course of treatment.

In short, if the evidence showed that there was no substantial probability that Nelson would become competent to stand trial within one year, discharge would have been required.  However, if the evidence did not supply this answer, the statute requires a period of further evaluation and treatment in order for the court to make that determination.  As Nelson's assignment of error correctly indicates, the important issue is what evidence the court had before it when it made its decision to continue further evaluation and treatment for up to four months.

{¶ 12} The record contains three items of evidence to this effect: Dr. Pawlarczyk's report, hearsay statements of Dr. Pawlarczyk offered by Nelson's counsel, and Dr.

Kapahi's report. Each of these items are potential sources of information that may be evidence from which the trial court could have drawn inferences concerning the substantial likelihood that Nelson could become competent to stand trial on the indictments against him. Nelson asserts error in that Dr. Kapahi's report should not have been considered, that Dr. Pawlarczyk's hearsay statements should have been, and that Dr. Pawlarczyk's report found Nelson incompetent to stand trial and, thus, no further information was needed. The state argues for affirming the trial court's decision and asserts that using Dr. Kapahi's report was proper but, if it was not, then the hearsay statements offered by Nelson's counsel also should not be considered.

{¶ 13} First, we consider Dr. Pawlarczyk's written report. Both parties stipulated to this report at the first hearing held December 19, 2013. Though the parties did not precisely clarify the nature of the stipulation, we may assume, based on common practice, that, at a minimum, the parties were agreeing that the report was authentic and admissible. However, though the report was provided to the trial court chambers (and though the record before this court has since been supplemented with a copy of the report), the report was not formally filed (even under seal) with the trial court. Nelson did not object to the trial court's ordering or using this report. Further, Nelson continues to rely on that report for this appeal without any objection. However, even if considered in full, this report says nothing whatsoever about whether Nelson could be made competent through treatment. This report does nothing to advance Nelson's claim that dismissal, pursuant to R.C. 2945.38(B)(2), would have been more appropriate than further evaluation, pursuant to R.C. 2945.38(B)(1)(a).

{¶ 14} The second item of evidence for our consideration supplements the first. In a hearing on February 12, 2014, Nelson's counsel stated on the record that Dr. Pawlarczyk had orally told her, prior to even the first competency hearing on December 19, 2013, that Nelson could not be restored to competence. The state offered no objection to this hearsay testimony by Nelson's trial counsel. Nelson urges on appeal that this hearsay statement by counsel was properly before the trial court because the state, by failing to object to Nelson's counsel's statements, approved the trial court's use of and reliance on what amounted to hearsay testimony of his counsel. " ' "The trial court has broad discretion in the admission * * * of evidence and unless it has clearly abused its discretion

and the defendant has been materially prejudiced thereby, [an appeals] court should be slow to interfere." ' " *State v. Lowe*, 69 Ohio St.3d 527, 532 (1994), quoting *State v. Maurer*, 15 Ohio St.3d 239, 265 (1984), quoting *State v. Hymore*, 9 Ohio St.2d 122, 128 (1967). Furthermore, the "[f]ailure to object to evidence at the trial constitutes a waiver of any challenge." *Maurer* at 259; *see also State v. Humberto*, 196 Ohio App.3d 230, 2011-Ohio-3080, ¶ 28 (10th Dist.). Taken alone, it was permissible for the trial court to not only admit but to rely on the statement of counsel as evidence toward the adjudication of Nelson's competency to stand trial, as long as Nelson was not materially prejudiced thereby. *Maurer* at 265.

{¶ 15} Regarding the third item of evidence, the state asks that we consider the report by Dr. Kapahi, even though it was not formally moved into evidence, stipulated to by the parties, or admitted by the trial court (it is before us via a motion to supplement the record filed August 25, 2014). Dr. Kapahi's report was provided to the chambers of the trial court on February 10, 2014, having been ordered by that court with the approval of both parties. Dr. Kapahi's report was discussed on the record at the February 12, 2014 hearing, without objection, by both parties and the trial court. The report indicates that Dr. Kapahi could not determine whether Nelson is capable of being made competent and suggests that an extended evaluation and treatment period might shed some light on the matter. Nelson argues that, though he failed to object and, in fact, approved the order that generated this second evaluation and report, Dr. Kapahi's report should never have been prepared or considered, because it constituted an illegal second evaluation.

{¶ 16} As Nelson points out, R.C. 2945.371(H) requires a second evaluation in cases where an individual is found to be "a mentally retarded person subject to institutionalization by court order." However, Nelson would have the appellate court interpret this section as having an implied converse, that when a person has not been found to be "subject to institutionalization by court order" a court is prohibited from ordering more than one evaluation of that person's competency to stand trial. To support this argument, Nelson urges that the canon of statutory interpretation, *inclusio unius est exclusio alterius* (the inclusion of one is the exclusion of others), means that R.C. 2945.371(H) forbids whatever it does not mandate. However, this argument incorrectly

presumes that division (H) is a trial court's only source of authority for ordering more than one evaluation. In fact, R.C. 2945.37(A) reads:

> If the issue of a defendant's competence to stand trial is raised or if a defendant enters a plea of not guilty by reason of insanity, the court may order *one or more* evaluations of the defendant's present mental condition.

(Emphasis added.) R.C. 2945.371(B) further envisions more than one evaluation in situations other than when a criminal defendant has been found to be "a mentally retarded person subject to institutionalization by court order." R.C. 2945.37(B) reads:

> If the court orders *more than one evaluation* under division (A) of this section.

(Emphasis added.) Divisions (A) and (B) of R.C. 2945.371 make clear that a court may, under the aegis of division (A), order "more than one evaluation" of a defendant, and neither even suggests that such a circumstance would only occur when a defendant is "subject to institutionalization" as contemplated in division (H). *See, e.g., State v. Hix*, 38 Ohio St.3d 129, 131 (1988) ("The trial court is granted the discretion to decide if more than one psychiatric examination is necessary.") (Footnote omitted.); *In re J.B.*, 12th Dist. No. CA2004-09-226, 2005-Ohio-7029, ¶ 35 ("R.C. 2945.371(A) states that the court may order one or more evaluations of the defendant's present mental condition if the defendant raises the issue of competency. The number of evaluations to be ordered is left to the sound discretion of the trial court."). (Citations omitted; internal quotation marks omitted.) Moreover, even if there were a conflict between divisions (H) and (A), as Nelson seems to suggest, R.C. 1.51 requires that we must read division (H) as an exception to division (A), not in lieu of (A).

{¶ 17} As a factual matter, Dr. Kapahi's report may not, in fact, be a second report. The first report by Dr. Pawlarczyk lacked vital information including, salient to this appeal, an opinion on whether Nelson could be made competent to stand trial. *See* R.C. 2945.371(G)(3)(c). Dr. Kapahi's report may not be so much a true second look at an already fully explored situation as it is a remedial measure to *complete* the tasks of the first evaluation. While Nelson's trial counsel later attempted to fill the gaps in Dr. Pawlarczyk's report with hearsay testimony, even if such statements of counsel were to be

considered, trial counsel did not offer this additional information about Dr. Pawlarczyk's report until Dr. Kapahi's completed evaluation and the second report were already being discussed by counsel and the court at the hearing on February 12, 2014.[2]  We therefore find that it was reasonable for the trial court to have ordered a second evaluation to provide an expert opinion for what was required but lacking in the first expert's report.

{¶ 18} It should also be noted that Nelson did not object when the evaluation by Dr. Kapahi was ordered on December 20, 2013 or to the creation of Dr. Kapahi's report. Further, Nelson did not object to the discussion of Dr. Kapahi's findings at the February 12, 2014 hearing.  While Nelson did later object to the trial court's use of that report after informing the court of hearsay concerning Dr. Pawlarczyk's report at the February 14, 2014 hearing, the trial court had discretion to consider it. *See, e.g., Maurer* at 259.[3]

{¶ 19}  It is axiomatic that "[a]ppellate review is limited to the record as it existed at the time the trial court rendered its judgment." *Wiltz v. Clark Schaefer Hackett & Co.*, 10th Dist. No. 11AP-64, 2011-Ohio-5616, ¶ 13.  Since the trial court had and considered all three items of evidence on February 14, 2014, ordering the four-month treatment and evaluation it believed was necessary to render its judgment as to Nelson's competency to stand trial, we do not violate the spirit of this rule by discussing all three items of that evidence now.  As to the procedurally based evidentiary issues of admission (stipulation or waiver in that much of the information in this case was not formally admitted into evidence or carefully adduced), the record is clear that neither side opposed the creation or use of any of this material until it had already been discussed and considered by the trial court.  Fortunately, we need not sort out whether the use of any of this information amounted to plain error because, whether or not the information had been used, the result would be the same.

{¶ 20}  If, for example, we were inclined to disregard principles of waiver and insist that the trial court should have ignored all evidence that had not been formally filed and

---

[2] The second evaluation was ordered on December 20, 2013.
[3] While Dr. Kapahi's report was not formally moved or accepted into evidence, nor stipulated to by the parties, it was considered by all of them.

admitted in strict compliance with the rules of evidence, we would be constrained to conclude that the trial court had little information from which to determine whether Nelson could have been made competent. That is, the most procedurally sound of the three pieces of information is Dr. Pawlarczyk's written report. That report, however, does not offer an opinion on the topic of whether Nelson could be made competent to stand trial. If the trial court had either no evidence or just Dr. Pawlarczyk's written report, it would have been "unable * * * to determine whether there [wa]s a substantial probability that the defendant w[ould] become competent," and, thus, would have been correct to "order continuing evaluation and treatment of the defendant for a period not to exceed four months." R.C. 2945.38(B)(1)(a).

{¶ 21} Conversely, if we were inclined to be "slow to interfere" out of respect for the parties' choices not to object at the trial level and, thus, we were to consider all three pieces of evidence, the result also would be the same. Nelson's counsel testified that Dr. Pawlarczyk orally opined that Nelson could not become competent. But, Dr. Kapahi's report noted Nelson's lack of effort in the evaluation process (and that he may have been more competent with greater effort expended during the evaluation). This is consistent with what is found within Dr. Pawlarczyk's report, that Nelson may not have been putting forth his full effort in answering questions. Dr. Pawlarczyk's written report says nothing about whether Nelson could become competent. Dr. Kapahi addresses that issue in his report but concludes that he could not determine if Nelson was capable of becoming competent. On such a mixed factual record, the trial court would have been well within its discretion if it decided that it was unable to determine whether or not Nelson was substantially likely to become competent and, accordingly, to order Nelson into an up-to-four-month treatment and evaluation program. R.C. 2945.38(B)(1)(a).

{¶ 22} Only if we were to ignore Dr. Kapahi's report while accepting Nelson's counsel's hearsay additions to Dr. Pawlarczyk's opinion could we agree that "the only evidence lawfully admitted indicates that [Nelson] was not competent to stand trial and not restorable to competency." (Nelson's Brief at 1.) We cannot conclude that the trial court considered any evidence it should not have.

{¶ 23} On any reasonable view of the evidence in this case, the trial court did not err when it ordered Nelson to undergo the up-to-four-month long evaluation.

Nonetheless, Nelson also argues that the trial court made the finding that Nelson was not restorable and, accordingly, that it should not have ordered him to further evaluation regardless of the evidence. It is true that the trial court made oral comments to that effect during a hearing. But the trial court never found through any journal entry that Nelson was not restorable. Moreover, "[t]hat a judge speaks as the court only through the journal of the court[,] is well settled." *State ex rel. Ruth v. Hoffman*, 82 Ohio App. 266, 268 (1st Dist.1947); *Fountain v. Pierce*, 123 Ohio St. 609 (1931), paragraph one of the syllabus. While the trial court did mention in its final order that it had orally found Nelson not to be competent, "[u]ntil finality has attached, the court has inherent power to reconsider any matter." *C.C.M. Enterprises, Inc. v. U.S. Fire Ins. Co.*, 1st Dist. No. C-870193 (Mar. 2, 1988). To the extent, then, that the trial court made inconsistent comments within its final entry, it appears to have been enunciating its reconsidered prior views, which is within its inherent power to do.

{¶ 24} Nelson's first assignment of error is overruled.

### B. Second Assignment of Error

{¶ 25} Nelson's second assignment of error essentially repeats his argument that the trial court was deprived of authority, by implication of R.C. 2945.371(H), to order the second evaluation with Dr. Kapahi or to consider his report. This, argues Nelson, resulted in a void judgment. However, the fact that R.C. 2945.371(H) mandates a second evaluation in cases where a person is found to be subject to institutionalization does not suffice to deprive a court of the authority to order a second evaluation in other situations—particularly when (as here) the parties request (or, at least, do not object to) the second evaluation and even approve of the order requiring it. "A party will not be permitted to take advantage of an error which he himself invited or induced." *Hal Artz Lincoln-Mercury, Inc. v. Ford Motor Co.*, 28 Ohio St.3d 20 (1986), paragraph one of the syllabus. We cannot require the trial court to disregard the second evaluation or declare its order for it void when the record shows that it was invited or induced by Nelson. Nelson should have objected to the second evaluation before it was ordered and undertaken rather than after its results were revealed, discussed, and relied on by the court. Appellant's second assignment of error is overruled.

## IV. MOTIONS

{¶ 26} Through various motions, arguments in their briefs, and statements offered at oral argument, the parties are in conflict as to whether Dr. Kapahi's report and Nelson's counsel's hearsay statements about Dr. Pawlarczyk's opinions are properly before the appellate court. They appear in the record, have been considered in the context in which they appear, and have been thoroughly addressed within this decision, making the settlement of those questions moot.

## V. CONCLUSION

{¶ 27} Appellant's two assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

TYACK and LUPER SCHUSTER, JJ., concur.

———————————