[Cite as *State v. Saini*, 2014-Ohio-5582.]

IN THE COURT OF APPEALS FOR GREENE COUNTY, OHIO

STATE OF OHIO                    :

    Plaintiff-Appellee           :          C.A. CASE NO.    2013 CA 36

v.                               :          T.C. NO.    12CR97

PARDEEP SAINI                    :          (Criminal appeal from
                                              Common Pleas Court)

    Defendant-Appellant          :

                                 :

· · · · · · · · · ·

**O P I N I O N**

Rendered on the ___19th___ day of ___December___, 2014.

· · · · · · · · · ·

ELIZABETH A. ELLIS, Atty. Reg. No. 0074332, Civil Division Chief, 61 Greene Street, Suite 200, Xenia, Ohio 45385
    Attorney for Plaintiff-Appellee

A. MARK SEGRETI, JR., Atty. Reg. No. 0009106, 1405 Streamside Drive, Dayton, Ohio 45459
    Attorney for Defendant-Appellant

· · · · · · · · · ·

DONOVAN, J.

{¶ 1}    Defendant-appellant Pardeep Saini appeals his conviction and sentence for one count of murder, in violation of R.C. 2903.02(A), a felony of the first degree, and one count of murder (proximate result of felonious assault), in violation R.C. 2903.02(B), a felony of the first degree.   Both murder counts were accompanied by firearm specifications, and the indictment contained a forfeiture specification for the firearm used in the offenses. Saini filed a timely notice of appeal with this Court on July 2, 2013.

{¶ 2}    The incident which forms the basis for the instant appeal occurred late during the night of January 8, 2012, or early in the morning of January 9, 2012, when Saini shot and killed his father, Onkar Saini, in the family residence located in Beavercreek, Ohio.  Saini shot his father five times with a .38 special revolver that he had purchased approximately six months earlier from a gun shop located in Beavercreek.   After the shooting occurred, Saini left his family's residence and drove to the Palace of Gold, a New Vrindaban/Hare Krishna community located near the city of Moundsville in West Virginia. Before reaching the Palace of Gold, Saini stopped, bought fast food, and checked in at a local hotel.   The next morning, after buying more fast food, Saini drove to the Palace of Gold.

{¶ 3}    After being alerted to his presence by employees at the Palace of Gold, Saini was arrested and taken into custody by the Western State Police of West Virginia on January 10, 2012.   On the morning of January 11, 2012, Detectives Brown and Unroe from the Beavercreek, Ohio Police Department traveled to Moundsville, West Virginia, where Saini was being held at the local jail.   Detective Brown testified that he and Detective Unroe

interviewed Saini for approximately one hour and ten minutes. Before the interview began, Detective Brown testified that he read Saini his constitutional rights. Saini also signed a pre-interview *Miranda* form which detailed his rights. Detective Brown testified that throughout the interview, Saini appeared focused and responded to questions appropriately. Detective Brown testified that by all accounts, Saini appeared normal. During the interview, however, Saini did not make any admissions regarding his role in his father's murder. Rather, Saini presented several theories regarding who killed his father, to wit: 1) his father committed suicide; 2) his brother shot his father; and 3) his cousin, while under the control of "outside forces," killed his father.

{¶ 4}    After returning to Ohio, Saini was held in the Greene County jail. On March 13, 2012, counsel for Saini filed a request for a competency evaluation. In a judgment entry issued on March 15, 2012, the trial court granted Saini's request for a competency evaluation and ordered that the examination be held at the Forensic Psychiatry Center for Western Ohio. The trial court further ordered that the evaluation report be submitted to the court no later than May 4, 2012. The judgment entry also ordered that a separate sanity evaluation be administered ostensibly pending the outcome of the competency hearing.

{¶ 5}    On April 13, 2012, Saini was indicted for two counts of murder, both counts accompanied by firearm specifications. At his arraignment on April 17, 2012, Saini pled not guilty by reason of insanity. On the same day, the trial court ordered that Saini be transferred to Twin Valley Behavioral Healthcare (TVBH) in Columbus, Ohio, for a mental competency evaluation at Moritz State Hospital. On June 14, 2012, after reviewing a

written report from Dr. John Tilley, a psychologist at TVBH, the trial court found that Saini was incompetent to presently stand trial, but restorable, and committed him to TVBH. The trial court further ordered the staff at TVBH to submit a report within one year regarding Saini's restoration to competency. On June 26, 2012, the trial court ordered forced medication on Saini in order to restore him to competency. Approximately five months later on November 27, 2012, Dr. Tilley submitted a report in which he found that through therapy and medication, Saini had been restored to competency and could stand trial.

{¶ 6} On January 8, 2013, the trial court found Saini competent to stand trial but ordered that he remain in custody at TVBH in order to maintain his competency. On February 27, 2013, Dr. Tilley filed an evaluation with the trial court in which he opined that as a result of his serious mental illness at the time of the shooting, Saini did not understand the wrongfulness of his actions. Dr. Tilley asserted that Saini was suffering from schizophrenia, and therefore, severely delusional at the time of the shooting. Dr. Tilley stated that Saini believed his father was trying to hurt or kill him, and Saini thought he was acting in self defense when he shot his father. Simply put, Dr. Tilley concluded that Saini was legally insane at the time he shot and killed his father, and was therefore, not responsible for his actions.

{¶ 7} The State immediately filed a motion requesting that the trial court order another sanity evaluation to be conducted by an examiner of its choice. We note that the trial court did not advise Saini of his right to an independent examination, but Saini neither requested nor recommended one. The State recommended Dr. Scott Bresler, a forensic psychologist employed at the Innocence Project at the University of Cincinnati, to evaluate

Saini in order to determine the issue of his sanity at the time he shot his father. Noting Saini's actions during and immediately after he killed his father, Dr. Bresler ultimately opined that he had some ability, if not full capacity, to understand the wrongfulness of his actions. While conceding that Saini was severely mentally ill at the time of the shooting, Dr. Bresler concluded that Saini was capable of understanding the wrongfulness of his actions at the time he committed the murder and was, therefore, legally sane.

{¶ 8}    Prior to trial, counsel for both parties submitted a stipulation of facts and exhibits to the trial court. Significantly, Saini stipulated to the fact he shot and killed his father. Moreover, both parties agreed that Saini was severely mentally ill before, during, and after he killed his father. The defense also filed a motion to waive the jury trial, which the court subsequently granted upon Saini waiving his right thereto on the record in writing in open court. Essentially, the only issue remaining for the trial court to determine was whether Saini was legally sane at the time of the shooting. After a trial held on June 4 and 5, 2013, the trial court found Saini guilty of both counts of murder, as charged in the indictment, with firearm specifications attached to both counts. After merging Count II with Count I, the trial court sentenced Saini to an aggregate term of eighteen years to life in prison.

{¶ 9}    It is from this judgment that Saini now appeals.

{¶ 10}    Saini's first assignment of error is as follows:

{¶ 11}    "THE JUDGMENT OF CONVICTION IS UNLAWFUL IN THAT DEFENDANT WAS DENIED HIS FIFTH AND SIXTH AMENDMENT AND OHIO CONSTITUTIONAL RIGHTS TO REMAIN SILENT, TO ADVICE OF COUNSEL, BY

ALLOWING USE OF HIS INTERROGATION BY POLICE BASED ON AN INVALID WAIVER OF RIGHTS BY AN INCOMPETENT AND SEVERELY MENTALLY ILL DEFENDANT."

{¶ 12} In his first assignment, Saini contends that because he was found to be incompetent to stand trial, the trial court erred when it failed to strike the statements he made to police when they interviewed him approximately two days after the shooting. Saini argues that because he was initially found to be incompetent to stand trial, he was, therefore, unable to knowingly, intelligently, and voluntarily waive his constitutional rights, and his statements should have been ruled inadmissible for any purpose at trial.

{¶ 13} Initially, we note that Saini failed to file a motion to suppress the statements he made during his interrogation by Detectives Brown and Unroe, nor did he object to the introduction of the statements during the trial. We also note that Saini's statements were exculpatory, not incriminating, as he did not admit killing his father. Significantly, the parties stipulated to the interrogation and its admission into evidence. The parties also stipulated to Dr. Bresler's sanity evaluation and addendum which relied heavily on the statements made by Saini and his demeanor during the interrogation. Thus, for purposes of appellate review, Saini has waived all but plain error. Plain error may be noticed if a manifest injustice is demonstrated. Crim.R. 52(B); *State v. Howard*, 2d Dist. Montgomery No. 23795, 2011-Ohio-27. In order to find a manifest miscarriage of justice, it must appear from the record as a whole that but for the error, the outcome of the trial clearly would have been otherwise. *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978).

{¶ 14} In the case at bar, Saini points out that a significant portion of the evidence

upon which Dr. Bresler relied in forming his opinion that the appellant was legally sane at the time he shot his father was the interrogation conducted by Detectives Brown and Unroe. Immediately prior to the interrogation, however, Saini signed a written waiver of his constitutional rights after an explanation thereof verbally and in writing  the Detectives. The interrogation occurred on January 11, 2012.   Saini was subsequently declared incompetent to stand trial, but restorable, in a judgment entry filed on June 14, 2012.

{¶ 15}  Saini argues that it was error for the trial court to allow use of his interrogation and waiver of rights when he was "shortly thereafter adjudicated to be incompetent to stand trial."   Thus, Saini asserts that his statements should have been subject to suppression and should not have been part of Dr. Bresler's evaluation of his sanity.

{¶ 16}  Whether a defendant is legally insane at the time an offense is committed and competent to stand trial are ruled by two different standards.   A defendant is presumed competent unless it is proven by a preponderance of the evidence that, because of his present mental condition, he is incapable of understanding the nature and objective of the proceedings against him or of assisting in his own defense. R.C. 2945.37(G).   In *Dusky v. U.S.,* 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960), the Supreme Court stated that the test for competency is whether the defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational as well as factual understanding of the proceeding against him."   Conversely, a person cannot be found not guilty by reason of insanity unless he proves that, at the time of the commission of the offense, he did not know, as a result of severe mental disease or defect, the wrongfulness of his acts. R.C. 2901.01(A)(14).

{¶ 17}  After viewing the video of Saini's interrogation, Dr. Bresler testified that Saini was responding to the detectives' questions in a very rational manner and did not appear to be internally preoccupied with his own thinking.  Dr. Bresler further testified that there was no delay in Saini's responses, he spoke at a normal pace, he was neither cautious nor nervous, and he was very forthcoming in his responses.  Dr. Bresler testified that Saini was also very organized in his responses to the questions posed by the detectives.

{¶ 18}  We have reviewed the transcript and the audio/video recording of the interrogation.  We note that Saini appears focused, polite, and cordial.  Saini appears to understand his *Miranda* rights as read to him by the detectives.  Saini also signed and acknowledged each right in the *Miranda* pre-interview form.  Detective Brown testified that Saini "was very articulate and receptive" regarding the interrogation that was conducted.  There were no delays in his responses to the detectives' questions.  Saini maintained eye contact with the detectives and was engaged in conversation.  Saini's responses were rationally related to the questions he was being asked.  In sum, the video recording of Saini's interrogation establishes that he was rational and coherent and did not appear to be suffering from any mental issues that affected his ability to understand and comprehend the nature of the detectives' questions at the time.  Thus, we conclude that Saini knowingly, intelligently, and voluntarily waived his constitutional rights, and his statements were admissible at trial.  Saini's subsequent finding of incompetency did not affect the admissibility of his earlier constitutional waiver and the statements he made during the interrogation.

{¶ 19}  Saini also argues that Dr. Bresler improperly relied on the fact that he

exercised his constitutional right to terminate the interrogation and consult legal counsel when formulating his expert opinion that Saini was legally sane at the time of the shooting. In support of his argument, Saini relies on our holding in *State v. Bumgardner*, 2d Dist. Greene No. 95 CA 11, 1996 WL 303574 (June 7, 1996), wherein we held that a prosecutor's use of a defendant's post-arrest, post-*Miranda* warning silence as evidence of sanity violates the Due Process Clause of the United States Constitution. In *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), the Supreme Court explained its rationale for prohibiting the use of a defendant's silence as evidence of guilt, even in the form of impeachment evidence as follows:

> [W]hile it is true that the *Miranda* warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings. In such circumstances, it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial.

*Id*. at 618.

{¶ 20} In *Wainwright v. Greenfield*, 474 U.S. 284, 106 S.Ct. 634, 88 L.Ed.2d 623 (1986), the U.S. Supreme Court extended its holding in *Doyle,* finding that there is no distinction between the constitutional prohibition against using a defendant's right to remain silent as proof of the commission of an offense and as impeachment evidence used to overcome an insanity defense. In both instances, the state seeks to make use of the defendant's exercise of his constitutional right in obtaining his conviction. *Id*. at 292.

{¶ 21}  In *Bumgardner*, the State elicited testimony from a detective who testified that when he asked the defendant if he would consent to an interview, the defendant immediately asked for counsel.  In overruling an objection to the admission of the detective's testimony in this regard, the trial court stated that it would consider the testimony "for the limited purpose of his mental state at the time." *Id*. at * 6.  We subsequently held that the trial court should not have permitted the detective to testify regarding the defendant's silence following his arrest for the purpose of rebutting his insanity defense. Additionally, we found that "insofar as the [trial court] explicitly stated on the record that [it] intended to consider Bumgardner's silence for the purpose of determining his competence at the time of the offense, we cannot indulge the usual presumption that the trial court disregarded inadmissible evidence in reaching its decision.  Rather, we are compelled to find that the trial court erred." *Id*. at * 7.

{¶ 22}  In the instant case, it is undisputed that Dr. Bresler used Saini's invocation of his right to counsel during the interrogation as a factor in his conclusion that Saini was legally sane at the time of the offense.  In light of our holding in *Bumgardner*, this is clearly improper.  Curiously, prior to the trial, the State contacted Dr. Bresler and informed him of the constitutional problem and asked the doctor to remove the pertinent references of Saini's invocation of his right to counsel from his report.  Dr. Bresler declined the State's request to remove the references but in an addendum to his initial expert report, he stated that even without the reference to Saini's invocation of counsel, his expert opinion that Saini was legally sane at the time of the commission of the offense did not change.

{¶ 23}  Significantly, unlike *Bumgardner*, however, no testimony was elicited

during trial regarding Saini's request for counsel which ended the interrogation. When the State presented the written transcript of the interrogation and the video recording of the interrogation to be played at trial, the trial court ruled in pertinent part:

The Court: ***. Anyway, there's a point in here, Line 1291, having read the transcript and having been advised that this is an accurate transcript of this video, *I'm going to make a ruling that this Court will strike everything in the video* – what is the Exhibit number on the video? Do you know off the top of your head?

The State: It is Exhibit 51.

The Court: Okay. Exhibits 51 and 52, I'm going to strike from the record anything after Line 1290 *and it will not be considered by the Court in the determination of the outcome of this case.*

*So I guess when we get to that point in the video you don't need to play it any longer.*

{¶ 24} By rendering this ruling, the trial court sought to avoid the problem faced in *Bumgardner*. Because the trial court struck the offending portion of the transcript and video from the record, we must "indulge the usual presumption that the trial court disregarded inadmissible evidence in reaching its decision." *Bumgardner*, at * 7. We also note that at no point during the trial was Saini's request for counsel mentioned by any of the parties to the instant case and Dr. Bresler did not allude to it in his testimony. Although Bresler's discussion of Saini's invocation of his right to counsel in his written report was improper, the appellant cannot establish that plain error occurred in this case, since the record clearly

refutes any inference that the trial court considered the statement. Moreover, based on its ruling, we may also presume that the trial court ignored Dr. Bresler's discussion of Saini's invocation of his right to counsel in the written report as well. *Maddox v. L.O. Warner, Inc.*, 2d Dist. Montgomery No. 15468, 1996 WL 50152 (February 7, 1996).

**{¶ 25}** Saini's first assignment of error is overruled.

**{¶ 26}** Saini's second assignment of error is as follows:

**{¶ 27}** "WHERE A CRIMINAL DEFENDANT PLEADS NGRI AND WAS ADMITTEDLY SUFFERING FROM A SEVERE MENTAL DISEASE OR DEFECT AT THE TIME OF THE OFFENSE OF KILLING HIS FATHER THAT WAS UNDISPUTED TO BE SCHIZOPHRENIA WITH PARANOIA AND AUDITORY HALLUCINATIONS, THE TRIAL COURT ERRS AND ABUSES ITS DISCRETION IN REJECTING THE DEFENSE AND FINDING HE WAS SANE AND GUILTY OF MURDER."

**{¶ 28}** In his second assignment, Saini essentially argues that his conviction was against the manifest weight of the evidence. Saini does not contend that the State failed to prove the elements of the offense of murder. Rather Saini argues that he established the elements of an NGRI defense and should have, therefore, been found not guilty.

**{¶ 29}** As this Court has noted:

"A challenge to the sufficiency of the evidence differs from a challenge to the manifest weight of the evidence." *State v. McKnight*, 107 Ohio St.3d 101,112, 2005-Ohio-6046, 837 N.E.2d 315. "In reviewing a claim of insufficient evidence, '[t]he relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact

could have found the essential elements of the crime proven beyond a reasonable doubt.' (Internal citations omitted). A claim that a jury verdict is against the manifest weight of the evidence involves a different test. 'The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" *Id*. (Internal citations omitted).

The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve. *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967). "Because the factfinder * * * has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684 (Aug. 22, 1997).

This court will not substitute its judgment for that of the trier of facts

on the issue of witness credibility unless it is patently apparent that the trier of fact lost its way in arriving at its verdict. *State v. Bradley*, 2d Dist. Champaign No. 97-CA-03, 1997 WL 691510 (Oct. 24, 1997).

*State v. Sims*, 2d Dist. Montgomery No. 24763, 2012-Ohio-3106, ¶ 8-10.

{¶ 30} A criminal defendant's sanity is not an element of an offense that the prosecution must prove. *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, 840 N.E.2d 1032, ¶ 35. Rather, a "plea of not guilty by reason of insanity is an affirmative defense, (internal citations omitted)[,] which must be proved by a preponderance of the evidence, R.C. 2901.05(A)." *State v. Brown,* 5 Ohio St.3d 133, 134, 449 N.E.2d 449 (1983). A person is not guilty by reason of insanity only if he proves _that at the time of the commission of the offense, the person did not know, as a result of a severe mental disease or defect, the wrongfulness of the person's acts._ R.C. 2901.01(A)(14). Accordingly, we will not reverse the trial court's decision if a rational trier of fact could find that Saini did not establish his defense by a preponderance of the evidence.

{¶ 31} Both parties relied upon expert testimony on this issue. In fact, after the stipulations were accepted by the trial court, the only issue left to decide at trial was whether Saini could appreciate the wrongfulness of his acts or to conform his conduct to the requirements of the law when he shot and killed his father. Both parties agreed that at the time of the shooting, Saini was severely mentally ill before, during, and after the commission of the offense. Dr. Tilley opined that based on his observation and treatment of Saini that he was delusional and experiencing auditory hallucinations that directed him to do certain things, from visiting a particular restaurant to purchasing a firearm for his own protection.

Dr. Tilley testified that in the days and months preceding the offense, Saini had grown increasingly paranoid for his own safety because of the voices he was hearing. Dr. Tilley testified that because of his paranoid delusions of persecution, Saini believed that some unknown individual "was going to do him imminent harm."

{¶ 32} On the night of the murder, Dr. Tilley testified that Saini stated that he had engaged in an argument with his father, and in process of that argument, Saini's paranoia became acute. As a result, Saini became convinced that his father was going to kill him. During this time, Dr. Tilley stated that Saini was hearing voices constantly telling him that his father was going to kill him and that he needed to act preemptively. At some point during their confrontation, Saini's father acquired a knife from the kitchen and threatened Saini with it. Saini reacted by shooting and killing his father. Dr. Tilley opined that based on his review of the available information surrounding the shooting, Saini did not appreciate the wrongfulness of his actions at the time of the offenses. Dr. Tilley further testified that because Saini was acutely paranoid and believing that his life was in imminent danger from his father, he basically acted in self defense by shooting his father. Thus, Saini believed he was justified in acting the way he did.

{¶ 33} Conversely, Dr. Bresler testified that although Saini was severely mentally ill at the time of the commission of the offense, the actions he took during and immediately after the shooting affirmatively establish that he was legally sane when he killed his father. Specifically, Dr. Bresler concluded that Saini appreciated the wrongfulness of his actions because he immediately fled the scene of the crime and drove to another state, and he was uncooperative with the police by giving them misleading information during the

interrogation. Saini also left the murder weapon at the scene of the crime because he stated that it was illegal to have a gun in his car. Moreover, Saini's calm and focused demeanor during the interrogation was inconsistent with someone who was "floridly psychotic," acutely paranoid, and having auditory hallucinations. Dr. Bresler testified that he thought that Saini was a very intelligent young man who was severely mentally disturbed. However, based upon the manner in which he handled evidence, departed the crime scene without reporting the shooting, and his attempts to mislead the police in their investigation, Dr. Bresler concluded that Saini clearly knew what he had done was wrong and wanted to run away from the consequences of his actions. On that basis, Dr. Bresler testified that Saini legally was sane when he shot and killed his father.

{¶ 34} We note that Saini asserts that because Dr. Tilley administered a psychological test on Saini before opining that the appellant was insane at the time of the offense, his conclusion is somehow more credible than Dr.Bresler's, who did not perform any psychological testing. The test administered by Dr. Tilley, the Structured Interview Reported Symptoms or "SIRS" test was designed to "assess for vain or malingered symptoms." It was administered to Saini in order to determine whether he was merely fabricating symptoms of mental illness. Dr. Tilley reported that the test established that Saini was being honest regarding his presentations of paranoid delusions and schizophrenia. When confronted with the results of Saini's SIRS test at trial, Dr. Bresler testified that all the test was designed to show was that Saini was not faking any symptoms of mental illness. Dr. Bresler further testified that he did not dispute that Saini was mentally ill before, during, and after the killing of his father. Dr. Bresler testified that the results of the SIRS test,

however, had no bearing on the issue of Saini's legal sanity at the time of the offense.

{¶ 35}  In light of the expert testimony presented at trial, we conclude that a rational trier of fact could find that Saini did not prove he was insane by a preponderance of the evidence.  The credibility of the witnesses and the weight to be given their testimony were matters for the court to resolve.  The trial court did not lose its way simply because it chose to believe the testimony of the State's expert, Dr. Bresler, over that of Dr. Tilley.  The weight of evidence adduced by both parties regarding the nature of Saini's mental illness and how it affected his behavior was very close.  Nevertheless, having reviewed the entire record, we cannot clearly find that the evidence weighs heavily against a conviction, or that a manifest miscarriage of justice has occurred.

{¶ 36}  Saini's second assignment of error is overruled.

{¶ 37}  Saini's third assignment of error is as follows:

{¶ 38}  "THE TRIAL COURT ERRED AND/OR ABUSED ITS DISCRETION IN ALLOWING THE PROSECUTOR TO HIRE AND USE AN OUTSIDE EXAMINER WITHOUT ADVISING THE DEFENDANT OF HIS RIGHT TO HAVE A PSYCHIATRIST TO ASSIST HIM IN THE CASE AND PURSUIT OF HIS NGRI DEFENSE, DENYING DEFENDANT'S SIXTH AMENDMENT RIGHT TO EFFECTIVE COUNSEL AND DUE PROCESS OF LAW."

{¶ 39}  In his third assignment, Saini argues that the trial court erred when it allowed the State to pursue a second expert opinion and then failed to advise the appellant of the right to an expert of his own choosing in pusuit of his NGRI defense.  In support of his argument, Saini cites to several cases, to wit: *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087,

84 L.Ed.2d 53 (1985); *Powell v. Collins*, 332 F.3d 376 (6th Cir.2003); and *Starr v. A.L. Lockart,* 23 F.3d 1280 (8th Cir.1994). However, Saini's reliance on these cases is not persuasive because they are all capital cases which establish that the defendant is entitled to a psychological expert for sentencing and mitigation purposes.

{¶ 40} In non-capital cases such as the present case, mental evaluations of defendants asserting an NGRI defense are controlled by R.C. 2945.371(A) & (B), which state in pertinent part:

(A) If the issue of a defendant's competence to stand trial is raised or if a defendant enters a plea of not guilty by reason of insanity, the court may order one or more evaluations of the defendant's present mental condition or, in the case of a plea of not guilty by reason of insanity, of the defendant's mental condition at the time of the offense charged. An examiner shall conduct the evaluation.

(B) If the court orders more than one evaluation under division (A) of this section, the prosecutor and the defendant may recommend to the court an examiner whom each prefers to perform one of the evaluations. If a defendant enters a plea of not guilty by reason of insanity and if the court does not designate an examiner recommended by the defendant, the court shall inform the defendant that the defendant may have independent expert evaluation and that, if the defendant is unable to obtain independent expert evaluation, it will be obtained for the defendant at public expense if the defendant is indigent.

{¶ 41} Upon review, we find that the trial court did not initially designate an

examiner recommended by either party. Rather, the trial court ordered that Saini be sent to TVBH where he would be evaluated for competency to stand trial and evaluated regarding his sanity at the time of the offense. The examiner, Dr. Tilley, was an independent examiner, as he was not chosen or recommended by either party. Moreover, the trial court did order both a competency and a sanity evaluation, and after Dr. Tilley evaluated Saini and concluded that he was insane at the time of the offense, the State was free to request their own expert be permitted to evaluate Saini's sanity, which it did, recommending Dr. Bresler. At this point, the trial court was under no obligation to inform Saini that he could request another evaluation since he had been independently evaluated by Dr. Tilley. Saini, of course, could have requested a third evaluation to "break the tie," but the failure to do so may well have been a tactical decision by Saini's counsel. Although a prior version of the statute was being analyzed, the Ohio Supreme Court held in *State v. Hix*, 38 Ohio St.3d 129, 527 N.E.2d 784 (1988), syllabus, that a defendant does not have a right to an independent psychiatric examiner unless the trial court has ordered more than one psychiatric evaluation *and* the trial court has refused to appoint an examiner recommended by the defendant. The record is devoid of any request or recommendation by Saini for another sanity evaluation administered by an examiner of his choosing which the trial court rejected. Accordingly, the trial court was not required to advise Saini that he had a right to an independent expert evaluation.

{¶ 42} Saini's third assignment of error is overruled.

{¶ 43} Saini's fourth assignment of error is as follows:

{¶ 44} "THE JUDGMENT OF CONVICTION IS CONTRARY TO LAW AND

VIOLATES DEFENDANT'S CONSTITUTIONAL RIGHTS TO DUE PROCESS AND EFFECTIVE ASSISTANCE OF COUNSEL UNDER THE SIXTH AMENDMENT AND OHIO CONSTITUTION."

{¶ 45} In his fourth and final assignment of error, Saini contends that "to the extent that the Court does not address any of the foregoing assignments of error and arguments based on defendant's trial counsel's failure to object, or move to suppress, or to strike or oppose testimony or documentary evidence, such failures should be found to constitute ineffective assistance of counsel."

{¶ 46} Saini relies upon counsel's failure to object, failure to file a motion to suppress, and failure to move to strike or oppose documentary evidence. However, Saini does not argue how these decisions on the part of defense counsel negatively impacted him or how these decisions would have changed the outcome of the trial.

{¶ 47} "We review the alleged instances of ineffective assistance of trial counsel under the two prong analysis set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and adopted by the Supreme Court of Ohio in *State v. Bradley* (1989), 42 Ohio St.3d 136, * * * . Pursuant to those cases, trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. *Strickland*, 466 U.S. at 688. To reverse a conviction based on ineffective assistance of counsel, it must be demonstrated that trial counsel's conduct fell below an objective standard of reasonableness and that his errors were serious enough to create a reasonable probability that, but for the errors, the result of the trial would have been different. *Id.* Hindsight is not permitted to distort the assessment of what was reasonable

in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel." (Internal citation omitted). *State v. Mitchell*, 2d Dist. Montgomery No. 21957, 2008-Ohio-493, ¶ 31.

**{¶ 48}** An appellant is not deprived of effective assistance of counsel when counsel chooses, for strategic reasons, not to pursue every possible trial tactic. *State v. Brown*, 38 Ohio St.3d 305, 319, 528 N.E.2d 523 (1988). The test for a claim of ineffective assistance of counsel is not whether counsel pursued every possible defense; the test is whether the defense chosen was objectively reasonable. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A reviewing court may not second-guess decisions of counsel which can be considered matters of trial strategy. *State v. Smith*, 17 Ohio St.3d 98, 477 N.E.2d 1128 (1985). Debatable strategic and tactical decisions may not form the basis of a claim for ineffective assistance of counsel, even if, in hindsight, it looks as if a better strategy had been available. *State v. Cook*, 65 Ohio St.3d 516, 524, 605 N.E.2d 70 (1992).

**{¶ 49}** The only question at issue in this trial was whether Saini was legally insane at the time he shot and killed his father. According to the judgment of the trial court, Saini failed to establish his NGRI defense by a preponderance of the evidence. Other than listing potential errors, Saini has failed to establish that any of his counsel's actions were deficient, thereby constituting ineffective assistance of counsel. More importantly, even if Saini's potential errors could be viewed as deficient, he has failed to establish that the outcome of the trial would have been different.

**{¶ 50}** Saini's fourth and final assignment of error is overruled.

**{¶ 51}** All of Saini's assignments of error having been overruled, the judgment of

the trial court is affirmed.

· · · · · · · · · ·

FROELICH, P.J. and HALL, J., concur.

Copies mailed to:

Elizabeth A. Ellis
A. Mark Segreti, Jr.
Hon. Stephen A. Wolaver