[Cite as *State v. Gardner*, 2022-Ohio-2973.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE COUNTY**

|  |  |  |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2022-CA-2 |
| | : | |
| v. | : | Trial Court Case No. 2020-CR-599 |
| | : | |
| SARA L. GARDNER | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 26th day of August, 2022.

. . . . . . . . . . .

MEGAN A. HAMMOND, Atty. Reg. No. 0097714, Assistant Prosecuting Attorney, Greene County Prosecutor's Office, 61 Greene Street, Suite 200, Xenia, Ohio 45385
    Attorney for Plaintiff-Appellee

GARY C. SCHAENGOLD, Atty. Reg. No. 0007144, 4 East Schantz Avenue, Dayton, Ohio 45409
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

EPLEY, J.

**{¶ 1}** Sara L. Gardner pled guilty in the Greene County Court of Common Pleas to aggravated possession of drugs, a felony of the fifth degree, with a forfeiture specification. The trial court imposed five years of basic community control, which included six months in jail with participation in the Greene Leaf substance abuse treatment program and a requirement that she pay a $50 supervision fee for 24 months plus court costs.

**{¶ 2}** Gardner's appointed counsel has filed a brief pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), stating that he cannot find any non-frivolous issues for appeal. As potential assignments of error, counsel raises the trial court's compliance with Crim.R. 11 and the appropriateness of Gardner's community control sanctions. Upon our independent review of the record, we agree with counsel's assessment that the appeal is frivolous. For the following reasons, the trial court's judgment will be affirmed. However, the matter will be remanded for a nunc pro tunc entry to remove the notification that Gardner can be sentenced to 180 days in prison for a technical violation of community control.

### I. Facts and Procedural History

**{¶ 3}** According to the presentence investigation report (PSI), at approximately 11:15 a.m. on July 17, 2020, Gardner broke the window of an orange Jeep Renegade that was parked in the rear parking lot of the Sugarcreek Health Center on Wilmington Pike in Sugarcreek Township. When the police arrived, three nurses, including the owner of the Jeep, were standing by the Jeep with Gardner. A brick was on the ground beside the passenger side of the vehicle, the front passenger window was shattered inward, and the side-view mirror housing was broken off. The owner told the officer that

she did not know Gardner and Gardner was not a patient at the health center. The owner further indicated that when the nurses asked Gardner who she was, Gardner responded "Virginia" (the first name of the vehicle's owner), which indicated to them that she had already gone through the owner's possessions.

{¶ 4} Gardner told the responding officer that she had COVID-19 and that her banana (located in a plastic grocery bag) also had COVID. The officer took Gardner's temperature, which was normal, and had her empty her pockets of the items she had taken from the vehicle, which included a keychain and a Planet Fitness card.

{¶ 5} The officer arrested Gardner and took her to the Sugarcreek Township Police Department. Once there, a detective searched Gardner and found a small baggie of white crystals, which Gardner identified as methamphetamine. Gardner told the detective that the sunglasses she had also belonged to the Jeep's owner. After an officer read Gardner her *Miranda* rights, Gardner declined to make a statement. The officer cited her for theft from a motor vehicle and criminal damaging and then released her on her own recognizance. While calling her boyfriend for a ride, she said that she "broke in a lady's window." The drugs were sent to a laboratory for analysis.

{¶ 6} On September 14, 2020, Gardner was indicted on aggravated possession of drugs (methamphetamine), in violation of R.C. 2925.11(A), a felony of the fifth degree. The charge included a forfeiture specification regarding the seized drugs and contraband. At her arraignment on October 9, 2020, Gardner pled not guilty and was granted an own recognizance bond.

{¶ 7} Gardner filed a motion for intervention in lieu of conviction (ILC). On

November 4, 2020, the trial court denied the motion, noting that Gardner had failed to pick up her ILC packet and schedule an interview, as she had previously arranged with the Adult Probation Department, and the Adult Probation Department had been unable to reach her after multiple attempts.

{¶ 8} On December 18, 2020, Gardner filed a motion for an evaluation of her present mental condition to determine her competency to stand trial, as well as her mental condition at the time of the offense. The court granted the motion and ordered her to report for an evaluation on February 24, 2021. At a March 24, 2021 competency hearing, defense counsel requested a second evaluation, which was granted. On November 4, 2021, the trial court conducted a second competency hearing, during which counsel stipulated to the second report. Based on the report, the trial court found Gardner competent and capable of assisting her attorney in the presentation of the case. The court scheduled a jury trial for January 10, 2022.

{¶ 9} On November 8, 2021, the parties appeared for a plea hearing, during which Gardner pled guilty to the charged offense and specification. As part of the plea agreement, the State recommended community control sanctions with substance abuse and mental health assessments, to be followed by any recommended treatment. The trial court ordered a presentence investigation and set sentencing for December 14, 2021.

{¶ 10} Between the plea and sentencing hearings, Gardner twice was found to have violated her bond. On November 23, the probation department notified the court that Gardner had tested positive for methamphetamine and amphetamine. The court found that Gardner had violated her bond, continued her bond, and notified her that any

additional violations could result in the revocation of her bond. On November 29, Gardner tested positive for methamphetamine and marijuana. On December 7, 2021, a magistrate set Gardner's bond at $10,000, no ten percent.

{¶ 11} At sentencing, the trial court imposed five years of basic community control, six months in jail, chemical dependency and mental health evaluations, and urinalysis. Gardner was required to pay a $50 supervision fee for 24 months plus court costs. In a separate entry, the trial court set forth the conditions of community control, which included that Gardner pay $75 per month toward her court costs and supervision fees and that she complete "Greene Leaf Program a 6 month Jail Sanction with Aftercare." In a third entry, the court entered judgment for $1,200 in supervision fees, plus court costs.

## II. *Anders* Review

{¶ 12} Upon the filing of an *Anders* brief, an appellate court must determine, "after a full examination of all the proceedings," whether the appeal is "wholly frivolous." *Anders*, 386 U.S. at 744, 87 S.Ct. 1396, 18 L.Ed.2d 493; *Penson v. Ohio*, 488 U.S. 75, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988). "An issue is not frivolous merely because the prosecution can be expected to present a strong argument in reply." *State v. White*, 2d Dist. Montgomery No. 28338, 2020-Ohio-5544, ¶ 14, citing *State v. Pullen*, 2d Dist. Montgomery No. 19232, 2002-Ohio-6788, ¶ 4. Rather, a frivolous appeal is one that presents issues lacking arguable merit, which means that, "on the facts and law involved, no responsible contention can be made that it offers a basis for reversal." *State v. Marbury*, 2d Dist. Montgomery No. 19226, 2003-Ohio-3242, ¶ 8, citing *Pullen* at ¶ 4. If we find that any issue – whether presented by appellate counsel, presented by the

defendant, or found through an independent analysis – is not wholly frivolous, we must reject the *Anders* brief and appoint new appellate counsel to represent the defendant. *White* at ¶ 14, citing *Marbury* at ¶ 7; *State v. Almeyda*, 2d Dist. Montgomery No. 28727, 2021-Ohio-862, ¶ 3.

**A. Pretrial Rulings**

{¶ 13} A plea of guilty is a complete admission of guilt. *E.g., State v. Faulkner*, 2d Dist. Champaign No. 2013-CA-43, 2015-Ohio-2059, ¶ 9; *State v. Wheeler*, 2d Dist. Montgomery No. 24112, 2011-Ohio-3423, ¶ 3; Crim.R. 11(B)(1). Consequently, a guilty plea generally waives all appealable errors that may have occurred in the trial court, unless such errors precluded the defendant from knowingly, intelligently, and voluntarily entering his or her guilty plea. *See, e.g., State v. Kelley*, 57 Ohio St.3d 127, 566 N.E.2d 658 (1991), paragraph two of the syllabus; *Wheeler* at ¶ 3.

*1. Denial of ILC*

{¶ 14} Gardner's guilty plea did not constitute a waiver of an argument that the trial court erred in denying her motion for ILC. *State v. Lucero*, 2d Dist. Clark No. 2018-CA-26, 2018-Ohio-4634, ¶ 11, citing *State v. Cebula*, 11th Dist. Lake No. 2013-L-085, 2014-Ohio-3276, ¶ 14-16. Nevertheless, we find no arguably meritorious claim on this issue.

{¶ 15} When Gardner's motion for ILC was filed and decided, R.C. 2951.041(A)(1) provided that a court could deny a request for intervention without a hearing. *Id.*; *State v. Nealeigh*, 2d Dist. Champaign No. 2010-CA-28, 2011-Ohio-1416, ¶ 7. (This provision was modified, effective April 12, 2021, in 2020 Am.Sub.H.B. 1.) This is what the trial court did. The record reflects that the denial of ILC was due to Gardner's failure to obtain

an ILC packet and to schedule an ILC interview with the Adult Probation Department. On the record before us, any claim that the trial court abused its discretion in the denying ILC would be frivolous.

*2. Competency/Sanity*

**{¶ 16}** "Whether a defendant is legally insane at the time an offense is committed and competent to stand trial are ruled by two different standards. A defendant is presumed competent unless it is proven by a preponderance of the evidence that, because of his [or her] present mental condition, he [or she] is incapable of understanding the nature and objective of the proceedings * * * or of assisting in his [or her] own defense. R.C. 2945.37(G). * * * Conversely, a person cannot be found not guilty by reason of insanity unless he [or she] proves that, at the time of the commission of the offense, he [or she] did not know, as a result of severe mental disease or defect, the wrongfulness of his [or her] acts. R.C. 2901.01(A)(14)." *State v. Saini*, 2d Dist. Greene No. 2013-CA-36, 2014-Ohio-5582, ¶ 16.

**{¶ 17}** Prior to entering her guilty plea, the trial court ordered psychiatric examinations to determine Gardner's competency to stand trial and whether she was sane at the time of the offense. The initial examination occurred in February 2021, and a second opinion was obtained in October 2021. Both sets of examination reports (both examiners issued separate reports for competency and sanity), which were stipulated to by the parties and accepted by the trial court, opined that Gardner was competent to stand trial and that she did not suffer from a severe mental defect or severe mental disease that prevented her from knowing the wrongfulness of her behavior when the

offense occurred. The trial court found Gardner competent to stand trial and sane at the time of the offense.

{¶ 18} We have held that a defendant's guilty plea constitutes "an implied admission of sanity." *State v. Harsh*, 2d Dist. Montgomery No. 29337, 2022-Ohio-1962, ¶ 18, quoting *State v. Pepper,* 2d Dist. Miami No. 2013-CA-6, 2014-Ohio-3841, ¶ 6. In addition, "issues of competency as they relate to a defense to criminal charges are waived by a plea of guilty." *Id.*, quoting *State v. Denton*, 2d Dist. Montgomery No. 11376, 1989 WL 159195 (Dec. 29, 1989). Accordingly, by entering her guilty plea, Gardner has waived arguments related to her competency and sanity. *Id.* at ¶ 18.

{¶ 19} Nonetheless, we have reviewed the forensic reports, which were included in the PSI. Gardner also represented at her plea hearing that she had been diagnosed with mental illnesses, but she did not believe that they affected her ability to understand what was occurring at the hearing. When asked if she was "completely of clear mind, clear thought, lucid, cognitive and understand these proceedings," Gardner responded affirmatively, and her attorney agreed. On the record before us, we find no arguably meritorious claim that the trial court erred in finding Gardner competent to stand trial.

**B. Plea Hearing**

{¶ 20} "Due process requires that a defendant's plea be knowing, intelligent, and voluntary," and compliance with Crim.R. 11(C) ensures the constitutional mandate is followed. *State v. Brown*, 2d Dist. Montgomery No. 28966, 2021-Ohio-2327, ¶ 8. Crim.R. 11(C)(2) mandates that a trial court may not accept a guilty plea without first addressing the defendant and:

(a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.

(b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.

(c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

{¶ 21} In reviewing the plea colloquy, the focus should be on whether "the dialogue between the court and the defendant demonstrates that the defendant understood the consequences of his plea." *State v. Dangler*, 162 Ohio St.3d 1, 2020-Ohio-2765, 164 N.E.3d 286, ¶ 12.

{¶ 22} In general, a defendant is not entitled to have his or her plea vacated unless the defendant demonstrates he or she was prejudiced by a failure of the trial court to comply with the provisions of Crim.R. 11(C). *Id.* at ¶ 16, citing *State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990). The test for prejudice is "whether the plea would have otherwise been made." *Id.*

**{¶ 23}** This general rule is subject to two exceptions. *Id.* at ¶ 16. First, the trial court must strictly comply with Crim.R. 11(C)(2)(c), as it pertains to the waiver of federal constitutional rights. *Id.* at ¶ 14; *Clark* at ¶ 31. "When a trial court fails to explain the constitutional rights that a defendant waives by pleading guilty or no contest, we presume that the plea was entered involuntarily and unknowingly, and no showing of prejudice is required." *Dangler* at ¶ 14.

**{¶ 24}** Second, "a trial court's complete failure to comply with a portion of Crim.R. 11(C) eliminates the defendant's burden to show prejudice." *Id.* at ¶ 15, citing *State v. Sarkozy*, 117 Ohio St.3d 86, 2008-Ohio-509, 881 N.E.2d 1224, ¶ 22. *See also State v. Bishop*, 156 Ohio St.3d 156, 2018-Ohio-5132, 124 N.E.3d 766, ¶ 11 (a defendant must show prejudice if the trial court partially complied with Crim.R. 11(C) in regard to a non-constitutional right, but no showing of prejudice is required if the trial court completely failed to comply).

**{¶ 25}** In this case, the transcript of the plea hearing reflects that Gardner's plea was made knowingly, intelligently, and voluntarily. Gardner was 34 years old and had completed high school. Although she had been diagnosed with mental illness, she stated that she was able to understand the proceedings. Her defense counsel agreed. Gardner was on probation for misdemeanor offenses related to this incident, and she indicated her understanding that her guilty plea in this case could have a negative impact on her probation status in her misdemeanor case. Gardner had spoken with her attorney and was satisfied with his advice. She disclosed that she had reviewed the Crim.R. 11 notification and waiver form, plea agreement report, and verdict of criminal forfeiture form

with her counsel, understood them, and signed them. She said that she was entering a guilty plea in this case of her own free will.

{¶ 26} The court told Gardner that her guilty plea constituted a complete admission that she had committed the charged offense and that the court could proceed to sentencing. It also advised her of the constitutional rights she was waiving by pleading guilty. Gardner expressed her understanding.

{¶ 27} The trial court further advised Gardner that the prosecution may make a sentencing recommendation, but the court was not bound to follow that recommendation. The trial court reviewed with Gardner the possible sanctions that she faced for aggravated possession of drugs, a fifth-degree felony. Those sanctions included a $2,500 fine, 12 months in prison, and a driver's license suspension of up to five years (because Gardner had violated the terms of her bond, the trial court had the discretion to impose a prison sentence. *See* R.C. 2929.13(B)(1)(b)(iii).) The court told Gardner that, if she were sent to prison, she would be subject to an optional two years of post-release control and the consequences of violating post-release control.

{¶ 28} Gardner was eligible for community control, and the court addressed the possible sanctions for technical and non-technical violations of community control. In explaining the possible sanctions, the court misspoke in two respects. First, it stated that, for a non-technical violation, she faced "an underlying prison term of 12 months." As of September 30, 2021, the trial court was no longer required to select a specific prison term and, instead, could select from the range of prison terms available for a fifth-degree felony. *See* R.C. 2929.15(B)(1)(c); R.C. 2929.15(B)(3). Second, the court told Gardner

that, for a technical violation, it "could send you to prison for either 90 or 180 days." Under R.C. 2929.15(B)(1)(c)(i), the maximum prison term for a technical violation of community control imposed for certain fifth-degree felonies, such as Gardner's offense, is 90 days. The maximum 180-day term applies to technical violations when community control was imposed for certain fourth-degree felonies. *See* R.C. 2929.15(B)(1)(c)(ii).

{¶ 29} Upon review of the record, the court strictly complied with the required constitutional advisements and with the non-constitutional advisements under Crim.R. 11(C)(b). Although the trial court erred in mentioning a specific prison term for non-technical violations and that Gardner could receive 180-days for a technical violations, the court partially complied with its obligations under Crim.R. 11(C)(a) and we find nothing in the record to suggest that Gardner was prejudiced by the misstatement. Significantly, Gardner chose to plead guilty even though, in reality, violations of community control could have resulted in a lesser penalty than she was told. We have held that a defendant is not prejudiced when he or she is misled to believe that a *longer* prison sentence is available than actually allowed. *State v. Carnicom*, 2d Dist. Miami No. 2003-CA-4, 2003-Ohio-4711, ¶ 16 ("[A]ny *overstatement* by the trial court regarding the potential length of a post-release control sanction cannot have prejudiced" the defendant); *see also State v. Russell*, 2d Dist. Montgomery No. 27473, 2018-Ohio-2571 (rejecting challenge to plea when nothing in the record suggested that the defendant was prejudiced by the court's misstatement that post-release control was discretionary rather than mandatory). Under the circumstances before us, any claim that Gardner's plea was not knowing, intelligent, and voluntary would be frivolous.

**C. Bond Violations**

{¶ 30} Between the plea hearing and sentencing, the probation department twice notified the trial court that Gardner had violated the conditions of her bond. After the first instance, Gardner's bond was continued despite the violation. Her bond was revoked after the second incident, and she was incarcerated until her sentencing hearing. There is no suggestion in the record that the trial court held a hearing on either alleged violation.

{¶ 31} We find no arguably meritorious claim in this instance. Gardner did not object to the trial court's failure to conduct a bond violation hearing. Although the occurrence of a bond violation gave the court discretion to impose a prison term for her fifth-degree felony offense, *see* R.C. 2929.13(B)(1)(b)(iii), the court ultimately did not impose a prison term. Even if the court had imposed a prison sentence, we have held that "R.C. 2929.13(B)(1)(b)(iii) is unambiguous, and does not require trial courts to initiate formal proceedings before concluding that defendants have violated bond conditions." *State v. Winstead*, 2015-Ohio-5391, 55 N.E.3d 477, ¶ 40 (2d Dist.). In this case, any alleged error by the trial court in failing to conduct a bond violation hearing was harmless, and no non-frivolous issue exists.

**D. Sentencing**

{¶ 32} Finally, appellate counsel raised whether the trial court abused its discretion in imposing community control sanctions. Counsel noted that Gardner had expressed a preference to participate in an outpatient drug treatment program, but the trial court felt that Greene Leaf, an inpatient program within the county jail, would be more appropriate.

{¶ 33} When reviewing a felony sentence, we must apply the standard of review

set forth in R.C. 2953.08(G)(2). *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 7-10. Under that statute, an appellate court may vacate or modify a felony sentence on appeal only if it determines by clear and convincing evidence that the record does not support the trial court's findings under certain enumerated statutes or that the sentence is otherwise contrary to law. *Id.* at ¶ 1, 9. R.C. 2929.13(B), which concerns whether certain offenders have mandatory community control, is one of the enumerated statutes found in R.C. 2953.08(G)(2). The statute applies to sentencing for non-violent, fifth-degree felonies such as Gardner's aggravated possession of drugs offense. R.C. 2929.11(C)(1)(a); *State v. Ebbing*, 2d Dist. Montgomery No. 28823, 2021-Ohio-865, ¶ 24.

{¶ 34} At sentencing, the trial court heard from defense counsel, who asked the court to consider outpatient treatment for Gardner. He expressed that Gardner had previously benefited from outpatient treatment but had difficulty with the after-care portion. Counsel noted that Gardner had been offered potential employment and wanted to take advantage of that opportunity. Speaking on her own behalf, Gardner raised similar points. The prosecutor stated that he did not have anything to add beyond the plea agreement.

{¶ 35} In sentencing Gardner, the trial court stated that it had considered the record, oral statements, and PSI. It further indicated that it had considered the purposes of felony sentencing under R.C. 2929.11, had balanced the seriousness and recidivism factors, and the need for deterrence, incapacitation, rehabilitation, and restitution, and that it was guided by the overriding purposes of felony sentencing, which it articulated.

The record thus establishes that the trial court considered the purposes and principles of felony sentencing in R.C. 2929.11 and the seriousness and recidivism factors in R.C. 2929.12.

{¶ 36} The court imposed five years of community control sanctions, which was within the range allowed by R.C. 2929.15(A)(1). Gardner said that she preferred an outpatient treatment program due to her past positive experience in such a program and the fact that she had been recently offered employment, which would assist her in meeting her financial obligations for this and the misdemeanor charges. However, the trial court acted within its discretion in determining that the Greene Leaf program would be a valuable placement for her and in imposing six months in jail with participation in that program.

{¶ 37} In addition, the trial court told Gardner that if she committed a non-technical violation of the conditions of community control, the court would impose a prison term of 6, 7, 8, 9, 10, 11, or 12 months, which was the statutory range for fifth-degree felonies. *See* R.C. 2929.14(A)(5); R.C. 2929.15(B)(1)(c); R.C. 2929.19(B)(4). Similar to its advisement at the plea hearing, the court also informed Gardner that if she committed a technical violation of community control, she could "receive a longer sanction on Community Control, or a more restrictive sanction, a local jail term, or * * * be sent to prison for either 90 or 180 days. That prison time would be credited towards your remaining time on Community Control." Although Gardner was not subject to 180 days in prison for a technical violation of community control, *see* 2929.15(B)(1)(c), that notification was superfluous, and we conclude that it did not create a non-frivolous issue

for appeal. *See, e.g., State v. Howard*, 2d Dist. Montgomery No. 28328, 2019-Ohio-5357, ¶ 49 (a trial court is authorized to remove the improper imposition of post-release control through a nunc pro tunc entry).

{¶ 38} The trial court provided additional advisements, including information about post-release control if she were sent to prison and the consequences of violating post-release control. The court informed her that she was entitled to 16 days of jail time credit, which was supported by the record.

{¶ 39} Upon review of the record, we find no non-frivolous issues related to Gardner's sentence.

### III. Conclusion

{¶ 40} We have conducted an independent review of the record, and we agree with appellate counsel that there are no non-frivolous issues for appeal. Accordingly, the trial court's judgment will be affirmed.

{¶ 41} As stated above, the trial court included in its sentence that Gardner could receive 90 or 180 days in prison for a technical violation of community control. Because Gardner is subject to 90 days in prison only for a technical violation, we remand for the limited purpose of a nunc pro tunc entry that deletes the reference to 180 days.

. . . . . . . . . . . .

DONOVAN, J. and WELBAUM, J., concur.

Copies sent to:

Megan A. Hammond
Gary C. Schaengold
Sara L. Gardner
Hon. Adolfo A. Tornichio